formed when the appellant obeyed its requirements. But it may be said that the original charges were used on this second trial or investigation, and that the appellant has found the relator guilty upon these charges. In the affidavit of the appellant it is declared that what are called the "original charges" were not considered in the final determination made by him. But, if they were, they are in the record; it is true, not as a separate document but they are identified by the relator in his petition. As before stated, he says that the charges upon which he was tried were embraced in five specifications, of which the first and third were new and not contained in the original charges. It is clear, therefore, that the original charges consisted of the three numbered in Schedule A of the return as the second, fourth, and fifth. If the fact that there were former charges, and their nature and the decision of the commissioner thereon, should become material to the decision of the proceeding, those matters appear without a further return. The return as made to the present writ was sufficient as a compliance with its requirements. Nor do we think the court below was justified in requiring the appellant to make a further return consisting of the finding made by the trial commissioner, or, if he made no finding, of such fact. The trial commissioner did make a finding or determination, and that appears from the return, in which it is stated that, after the termination of the trial, hearing, or investigation, the charges and specifications, testimony taken, and proceedings had were duly considered by the first deputy police commissioner, and it was determined by him, in the exercise of his best judgment and discretion, that the relator was guilty of said charges. Thereafter a finding was made. The commissioner cannot be compelled to make a return of a written finding, if there were no finding in writing, as the appellant states in his affidavit, read in opposition to the motion. He says: "No written finding was made in the present instance." The deputy commissioner before whom the investigation or trial was had was not required to make a finding in writing. People ex rel. Garvey v. Partridge, 180 N. Y. 237, 73 N. E. 4. As no finding in writing was made by the deputy commissioner, none can be returned as part of the record; and what he found orally is stated in the return.

The order appealed from should be reversed, with $10 costs and disbursements, and motion denied, with $10 costs. All concur.

---

(112 App. Div. 176)

### In re WALTON.

(Supreme Court, Appellate Division, First Department.    March 23, 1906.)

1. EXECUTORS AND ADMINISTRATORS—DECEASED EXECUTORS—ACCOUNTING.
   The estate of an executor should not be charged with the amounts of uncollected judgments, book accounts, and notes of testator; the executor as such or otherwise never having received them, and such judgments, accounts, and notes having vested in the administrator with the will annexed of testator on the death of the executor.

2. SAME—REQUIRING PROPERTY TO BE TURNED OVER.
   Code Civ. Proc. § 2606, provides that, where an executor dies, the Surrogate's Court has the same jurisdiction, on petition of persons interested, to compel the executor or administrator of the decedent to ac-

count which it would have had his letters been revoked by a surrogate's decree, and has also jurisdiction to compel the executor or administrator or successor of any decedent at any time to deliver over any of the trust property which has come into his possession or is under his control. *Held* that, while in such proceeding a valid adjudication of the account between a decedent and the estate of his deceased executor may be had, the executor of the deceased executor may be required to pay over only money or property which has come into his possession or is under his control.

**8. SAME—COSTS.**

The executrix of a deceased executor may not be personally charged with the costs of a proceeding to compel her to account as to the estate of which her testator was executor; she having received no property as executrix, and having been guilty of no misappropriation of funds and of no wrongdoing.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, §§ 2260–2264.]

Appeal from Surrogate's Court, New York County.

In the matter of the judicial settlement of the account of Anna T. Walton, as executrix of Patrick Walton, deceased, who was executor and trustee under the will of James Hernon, deceased. From the decree settling the accounts, Anna T. Walton, individually and as executrix, appeals. Modified.

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, LAUGHLIN, and CLARKE, JJ.

C. Bertram Plante and George Hahn, for appellant.

Charles C. Sanders, for respondents.

INGRAHAM, J. It appeared than one James Hernon died, leaving a last will and testament which was admitted to probate February 19, 1895, appointing one Patrick Walton executor, and letters testamentary were issued to him, he taking possession of the estate, and that Patrick Walton died on August 11, 1897, leaving a last will and testament admitted to probate on September 8, 1897, by which Anna T. Walton, his wife, was appointed his executrix. By the will of James Hernon he left his residuary estate to his two sisters, Mary Conley and Anna T. Walton. Mary Conley died in July, 1891. Letters of administration were issued upon her estate to Anna Conley, one of the respondents. As such administratrix, she became entitled to the legacy given and bequeathed by the will of James Hernon to Mary Conley. On September 17, 1901, this proceeding was instituted to compel Anna T. Walton, executrix of Patrick Walton, to account for the property of James Hernon which came into his hands. There is no allegation in the petition that any assets belonging to the estate of James Hernon had come into the possession of Anna T. Walton, as executrix of Partick Walton. Upon this petition the surrogate granted a decree requiring Anna T. Walton, as executrix of James Hernon, deceased, to render and judicially settle the accounts of Patrick Walton as executor of James Hernon, and also to settle her own account, as executrix of the will of Patrick Walton, deceased, in relation to the estate of James Hernon, deceased. In pursuance of this decree Anna T. Walton filed an account from which it appears that personal property aggregating $13,607.29 came into the posses-

sion of Patrick Walton as executor of James Hernon, and that of that amount there were judgments recovered by James Hernon, but which were unpaid and uncollectible, aggregating $4,423.36, that the said Patrick Walton paid funeral expenses and debts of the decedent aggregating $6,440.59, and that there had been paid to legatees of the deceased the sum of $1,541.65. It was further stated that Patrick Walton, the deceased executor, left no estate, either real or personal, and that Anna T. Walton, as his executrix, had never received any property from him. That at the time of the death of said Patrick Walton there was in banks to the credit of said James Hernon the sum of $665.97, and that this amount had been received by Anna.T. Walton as administratrix with the will annexed, and was the only amount that the executrix of Patrick Walton received of the estate of James Hernon.

Objections were filed to this account, whereupon the surrogate appointed a referee to hear and determine all the questions arising upon the settlement of the said account. The referee found that Patrick Walton, as executor and trustee under the will of James Hernon, opened three bank accounts, in which there was deposited an aggregate of $13,595.35, and that at the death of Patrick Walton there was on deposit in these three banks to the credit of the estate of James Hernon $669.13, which was subsequent to the death of Patrick Walton received by Anna T. Walton, as the administratrix with the will annexed of James Hernon, deceased. The referee further found that, in addition to the amounts thus deposited in these banks to the credit of the estate of James Hernon, his executor, Patrick Walton, had received various sums of money which, with the amount so deposited, aggregated $15,244.62, and that, in addition to that amount, Anna T. Walton, as executrix of Patrick Walton, deceased, had received of the estate of James Hernon the sum of $181.09, making an aggregate sum for which the estate of Patrick Walton is chargeable of $15,425.71. The referee further reported that Mary Conley and Anna T. Walton were each entitled to one-half of the residuary estate, that payments made out of the residuary estate to Anna T. Walton exceeded payments made thereout to Mary Conley by at least the sum of $2,785.60, and that to equalize the payments shown to have been made to Anna T. Walton the said sum of $2,785.60 must be paid to the estate of Mary Conley, deceased, before any further payment is made to Anna T. Walton and before division and distribution of the estate is made, and, as a conclusion of law, that the estate of Patrick Walton, as executor and trustee of James Hernon, deceased, and the estate of said Walton, is chargeable with the sum of $30,034.62. In this amount is included the uncollected judgments, uncollected book accounts, and unpaid notes, amounting to $12,748.29, which were never received by Patrick Walton as executor of James Hernon, and never received by Anna T. Walton as executrix of Patrick Walton.

It would seem that there was no justification for charging these amounts of uncollected debts and judgments against the estate of Patrick Walton, deceased. He never received them, either as executor or otherwise, and on the appointment of the administratrix with the will annexed of James Hernon, deceased, these uncollected judgments

and book accounts and notes vested in such administratrix with the will annexed; and this amount should therefore be deducted from the amount for which the estate of Patrick Walton, as executor, is chargeable, leaving a balance chargeable against the estate of Patrick Walton of $17,286.33. The referee then found that Patrick Walton was entitled to credits aggregating $9,791.09, which would leave a balance chargeable against the estate of Patrick Walton in favor of the estate of James Hernon of $7,495.24. Exceptions were filed to this report, and it was modified by the surrogate by deducting $181.09 from the amount, which would leave the amount for which the estate of Patrick Walton is chargeable at $7,314.13. The surrogate in his opinion states that "it does not appear that any of the assets of James Hernon have come into possession of Anna T. Walton as executrix of the will of Patrick Walton, the deceased executor of James Hernon"; that "the legal representative of the estate of James Hernon is Anna T. Walton, as administratrix of his estate with the will annexed"; that "the decree must therefore here require her, as executrix of the will of Patrick Walton, to pay the amount adjudged to herself as such administratrix, etc., of James Hernon"; and that no distribution can be had of any amount thus recovered until Mrs. Walton shall account as administratrix, etc., of James Hernon. The surrogate further directed that the costs of the proceeding, other than the disbursements for the stenographer, are to be charged against Anna T. Walton personally; and a decree was entered in accordance with this conclusion, and from that decree Anna T. Walton, as executrix and individually, appeals.

The jurisdiction of the surrogate in this proceeding is based upon section 2606 of the Code of Civil Procedure. That section provides:

"Where an executor * * * dies, the Surrogate's Court has the same jurisdiction, upon the petition of his successor, or of a surviving executor, administrator or guardian, or of a creditor, or person interested in the estate, * * * to compel the executor or administrator of the decedent to account, which it would have against the decedent if his letters have been revoked by a surrogate's decree. * * * On a petition filed either by or against an executor or administrator of a deceased executor, administrator, guardian or testamentary trustee. * * * The Surrogate's Court has also jurisdiction to compel the executor or administrator, or successor of any decedent, at any time to deliver over any of the trust property which has come to his possession or is under his control, and if the same is delivered over after a decree, the court must allow such credit upon the decree as justice requires."

By this section the surrogate is given power to require the executor of a deceased executor to account for the acts and doings of the decedent and for the trust property which has come into the possession of the decedent, and may at the same time compel the executor or administrator of a deceased executor to deliver over any of the trust property which has come into his possession or under his control. It seems to me that an accounting under this section can determine the condition of the account as between the decedent and the estate of his deceased executor, and if this adjudication thus settling the accounts is valid, the decree of the surrogate should be modified by fixing the amount of $7,314.13 as before indicated.

The surrogate has also jurisdiction to compel the executor of the de-

ceased executor to deliver over any of the trust property which has come to his possession or is under his control; but he can only require the executor of the deceased executor to pay over to his successors money or property which has come into his possession or under his control. As there was no allegation in the petition that any money had come into the possession of Anna T. Walton, as executrix of Patrick Walton, that belonged to the estate of James Hernon, and as there was no finding that there was any such property, there could be no decree directing the appellant, as executrix of the estate of Patrick Walton, to pay to herself as administratrix with the will annexed of Patrick Walton any money or to deliver any property. This portion of the decree, therefore, which directs Anna T. Walton, as executrix of Patrick Walton, to pay over or deliver any property to herself as administratrix of the estate of James Hernon, should be stricken out.

The decree also requires that the costs of this proceeding be paid by Anna T. Walton personally. I do not find that there was any jurisdiction for this provision of the decree. Anna T. Walton has been guilty of no misappropriation of funds and of no wrongdoing, so far as is disclosed by this record. She has received no property as executrix of Patrick Walton of any kind. She is chargeable with no neglect or violation of duty in relation to the estate of James Hernon, or in relation to the estate of Patrick Walton, so far as is disclosed by this record. The fact that her husband was a defaulter, or that he misappropriated the property of this estate, is certainly no reason for charging her personally with the costs of this proceeding. I think, therefore, the judgment should be modified by striking out the provision making these costs payable by Anna T. Walton personally, and by providing that they should be payable by the estate of Patrick Walton.

As this disposed of all the questions presented on this appeal that requires discussion, the decree is modified as before indicated, and, as modified, affirmed, without costs of this appeal. All concur.