In the Matter of the Estate of THOMAS READ, SR., Deceased.

Surrogate's Court, Kings County, October 31, 1931.

*Peyser & Harris*, for the petitioner.

*Forster, Hotaling & Klenke*, for the respondents.

WINGATE, S. As set forth in the petition and answer, the facts pertinent to this application for a compulsory accounting are somewhat unusual.

Thomas Read, Sr., died in July, 1872, leaving a holographic will by which his plumbing business was bequeathed to his eldest son, the balance of his real and personal property being devised and bequeathed to his wife, Sarah Ann Read, subject to an annuity of $500 to his mother, and payments of $5,000 each to his four sons on their respectively attaining their majority, and $3,000 to each of his daughters on attaining the age of eighteen.

The will then proceeded: "I desire that my wife Sarah Ann Read should hold all my property real estate and personal until such times as the children shall become of age and in case the property should not be sufficient to pay the above bequests then in that case the property is to be divided and each child payed in the same proportion and if there should be more then my wife is to have it as long as she lives when it will be for to be divided amongst the children share and share alike."

His wife and eldest son were appointed executors, and the testator further stipulated that "the executors are to act without giving any security of any kind."

In the same year as the death, the eldest son, who was then of age, brought a proceeding in the Supreme Court for the partition of the real estate, to which the petitioner in this proceeding, then an infant, was a party, by guardian *ad litem*. In 1873 a judgment was made, partitioning the real estate and determining that all of

the pecuniary provisions hereinbefore noted were charges thereon. It was also provided that the $5,000 payment for this petitioner should be paid to the county treasurer of Kings county pending his arrival at majority. This appears to have been done.

The petitioner became of age in 1885, but made no move to compel an accounting. In fact, he does not seem to have made any claim whatsoever against the estate until the fall of 1931.

Sarah Ann Read, the widow and life tenant, died in 1917, and Thomas Read, Jr., the son and coexecutor, died in 1930.

The only defenses interposed by the respondents are those of laches on the part of the petitioner and the running of the Statute of Limitations.

It is unquestionable that the obligations of the executors were of such a continuing trust nature that the Statute of Limitations would not begin to run against any persons seeking an accounting from them until an open repudiation of their fiduciary relationship took place. It is unnecessary to dwell at length upon this point, as it received full consideration, and the pertinent authorities were reviewed *in extenso*, in the recent opinion of this court in *Matter of Beard* (141 Misc. 888). As a result of this principle of law, it is unquestionable that at any time prior to his death, Thomas Read, Jr., could have been compelled to account for his acts as executor under his father's will, and it further follows from the provisions of section 257 of the Surrogate's Court Act that a like obligation rests upon the respondents herein, who are the executors of such deceased executor. (*Matter of Walton*, 112 App. Div. 176, 180.)

As noted in last cited decision, however, whereas it is the obligation of executors of a deceased executor to account for the acts of their testator, performed in a fiduciary capacity, they can only be compelled to turn over property of the underlying estate which has actually come into their possession. On this subject the court says as follows (at p. 180): "The surrogate has also jurisdiction to compel the executor of the deceased executor to deliver over any of the trust property which has come to his possession or is under his control, but he can only require the executor of the deceased executor to pay over to his successors money or property which has come into his possession or under his control."

Whereas, therefore, the answer of the respondents, interposing as a defense only laches and the running of the Statute of Limitations, must be overruled, the court, as one of equitable jurisdiction, will not compel their performance of an impossible task.

It seems apparent from the terms of the will above quoted that

in so far as the estate consisted of real estate, it never came into the possession of or under the control of the executors. Indeed, the partition judgment of 1873 seems amply determinative of this question. Furthermore, whereas the personal property of the estate, aside from the specifically bequeathed plumbing business, would, in the ordinary course, have come into the possession of the executors and be the subject of an account, the provisions of the will expressly made the widow the life tenant thereof. In view of the fact that she was a coexecutor, it is more than probable that such personal property was merely turned over to her under her life tenancy, pursuant to the terms of the will. In such cases it is, of course, usually advisable to require security from a life tenant before delivering possession of the property to her, but as is noted in *Matter of Hamlin* (141 App. Div. 318, at p. 329): "We do not think the authorities support any such absolute obligation. We think that the utmost that can be said is that a discretion is conferred upon the executors, to require security for the ultimate benefit of the remaindermen, if, in their judgment, under the terms of the will and the circumstances existing at the time of the payment over, they deem it necessary. But when they have acted and have transferred the possession to the life tenants without requiring security, they are not to be surcharged with the amounts so paid, because of the mere fact that in the exercise of their discretion they did not demand such security." That this rule is also followed in the Second Department is demonstrated by the decision in *Matter of Rowland* (153 App. Div. 327, 332).

The mere absence of any security for return would seem to indicate that the executors had exercised their discretion in favor of turning over such personal property to the widow without security, and under the terms of the will, with its direction that no security be required from the widow as executrix, the court is not prepared to hold that such act of the executors in dispensing with security was improper.

In such a situation it would follow that the widow herself became a constructive trustee of the personal property for the benefit of the remaindermen. (*Matter of Ungrich*, 48 App. Div. 594; affd., 166 N. Y. 618; *Leggett* v. *Stevens*, 185 id. 70.)

As a result, the rights of the remaindermen, so far as any beneficial recovery is concerned, would be transferred from the executors as such to the widow in her capacity of constructive trustee.

Whereas, therefore, it seems apparent on the statements set forth in the papers herein that petitioner's remedy to require an accounting is wholly illusory so far as the possibility of recovery

of any tangible benefit is concerned, nevertheless, it is his absolute right to demand that the respondents account for the acts of their testator in connection with the principal estate herein.

In view of the extreme length of time which has elapsed since the transactions in question took place and the presumable difficulty which the respondents will have in ascertaining such facts in connection with the matter as may be yet available due to the death of all who participated therein, the respondents may have six months within which to file the account.

Proceed accordingly.