(22 Misc. Rep. 217.)

In re TE CULVER'S ESTATE.

(Surrogate's Court, Chautauqua County.    December, 1897.)

1. ADMINISTRATORS—LIABILITY FOR FUNDS—PAYMENT TO SURROGATE.
    When, on judicial settlement with administrators, a certain sum was found
    due, and the administrators gave their check therefor to the surrogate, who
    gave a receipt therefor, but no final decree was made, nor the money ever
    distributed to the heirs, the administrators are liable to the heirs for said sum.

2. SAME—PAYMENT INTO COURT—WHAT CONSTITUTES.
    Where administrators paid to the surrogate, at a judicial settlement of their
    accounts, the sum found remaining in their hands, to be distributed to the
    heirs, and received therefor a receipt signed by the surrogate, such receipt
    does not constitute an order of court for the payment into court of such
    money, since, under Code Civ. Proc. § 2537, such payment can only be made
    by deposit with the county treasurer.

3. SAME—DISTRIBUTION—AUTHORITY OF SURROGATE.
    Under Code Civ. Proc. §§ 2743, 2748, providing that on judicial settlement
    of accounts of an administrator, if any part of the estate remains, and is ready
    for distribution, the decree of the court must direct distribution, and that
    "the decree must direct the * * * administrator to pay to the county
    treasurer a * * * distributive share which is not paid to the person entitled
    thereto, at the expiration of two years," a surrogate has no authority to order
    payment into court until the administrator has held funds for two years, and
    made an offer of distribution in accordance with the directions of the decree.

Petition of Garret Legters, one of the next of kin, praying that ad-
ministrators of the estate of Betsy Te Culver, deceased, be required
to render and settle their accounts, and that he be paid his distribu-
tive share.    Decree charging administrators with certain moneys.

Ottaway & Munson, for petitioner.
H. C. Kingsbury, for administrators.

WOODBURY, S.    Henry Ten Hagen and Garret Te Culver were
appointed administrators of the estate on the 23d day of January,
1893.    In February, 1894, they filed their petition praying for a judi-
cial settlement of their accounts.    A citation was thereupon issued,
directed to all the next of kin, requiring them to appear before this
court on the 7th day of May, 1894, and attend such settlement.    The
citation was duly served, and on or before the return day thereof the
administrators prepared an account of their proceedings, in proper
form of law, and filed the same with the surrogate.    On the day of
the return of the citation the account was examined and agreed to,
as presented, by the court and all the next of kin who appeared.    It
was found and agreed that there remained in the hands of the ad-
ministrators the sum of $608.43, to be distributed in equal parts
among the seven next of kin of the decedent, of which the petitioner
herein was one, and all that remained to be done to complete the ad-
ministration of the estate was for the court to make its decree set-
tling the account, and directing distribution, and for the administra-
tors to make such distribution in accordance with such decree.    It
appears, however, that no such decree was ever made or entered, and
the money has never been distributed.    On the day of the settle-
ment, viz. May 7, 1894, it appears that the administrators gave their
check for the balance which remained in their hands for distribution,
to the surrogate, which check is in words and figures as follows, viz.:

"Sherman, New York, May 7, 1894.

"The State Bank of Sherman: Pay to the order Daniel Sherman, surrogate, six hundred eight $43/100$ dollars.
"$608.43.
    "[Signed]                                       Henry Ten Hagen,
                                                    "Garret Te Culver,
                              "Administrators of Est. Betsy Te Culver."

Across the back of this check appears the following indorsement:
"Pay to the order of W. O. Benedict, cashier.
        "[Signed]                            Daniel Sherman, Surrogate."

It is admitted that Mr. Benedict was at that time cashier of the Chautauqua County National Bank of Jamestown, N. Y. The petitioner does not dispute the fact that the check was paid, and it is to be regarded as an established fact in this proceeding that it was paid upon presentation. In this manner these administrators paid to Daniel Sherman, surrogate, the balance which remained for distribution among the next of kin. At the time of receiving the check, Judge Sherman gave to the administrators his receipt for the moneys so paid to him, which is as follows:

"Chautauqua County Surrogate Court.
        "In the Matter of the Estate of Betsy Te Culver, Deceased.
"Received of Henry Ten Hagen and Garret Te Culver, administrators of the estate of Betsy Te Culver, deceased, $608.43; being balance of amount of personal estate of the said Betsy Te Culver, deceased; being amount of total balance of personal estate of said decedent to be distributed to her next of kin, which said balance is found and determined upon judicial settlement of the accounts of said administrators, presented and filed by this court this 7th day of May, 1894.
"Dated Mayville, N. Y., May 7, 1894.        Daniel Sherman, Surrogate."

As matters were arranged and left on the 7th day of May, 1894, so they have ever since continued, and still remain. As we have already stated, no decree has ever been entered, and no distribution has ever been made. On June last, Garret Legters, one of the next of kin entitled to a share of this money, presented his petition to this court, praying that these administrators be required to render and settle their accounts, to the end that he should be paid his distributive share. A citation was thereupon issued to, and served upon, the administrators; requiring them to appear at a time and place specified, and show cause why the prayer of the petition should not be granted. The administrators appeared pursuant thereto, and the proceeding was from time to time adjourned, until the 8th day of November, 1897, when the foregoing facts were made to appear. On that day this court made an order directing the administrators to render and file an account of their proceedings forthwith, and to appear on such day as the proceeding should be adjourned to, for the purpose of settling the same. The administrators adopted and reaffirmed their account filed in 1894 as their account in this proceeding, and in connection therewith made allegation and claim that by virtue of an order made in open court by Daniel Sherman, then surrogate, on the said 7th day of May, 1894, they paid into court, and to the said surrogate, the balance found due upon said account, being the said balance of $608.43. The proceeding was then adjourned to November 29, 1897. Citation was issued to all the next of kin, re-

quiring them to appear on said day to attend such settlement, and by the service of said citation, or by appearance, all of the next of kin have been made parties to this proceeding. On the day last named the administrators, petitioner, and several of the next of kin appeared. No new evidence was offered, but the admissions made and the evidence offered and received theretofore are, under stipulation, to be considered as made, taken, and received on that day, reserving to each party all objections and exceptions to the admission or rejection of evidence which were made or taken at the time it was offered.

Having stated the facts and history of the case as they have been made to appear, and the claims made by the administrators, we are brought to the consideration of the legal aspect of this interesting and unfortunate case,—interesting because it involves a legal question which has not been passed upon by our courts, so far as we are aware, and unfortunate because it is doubtful if this money can be recovered, and innocent persons will have to suffer the loss. Upon the conclusions reached by this court, or some higher court on appeal, will depend the question whether the loss must be borne by the administrators or by the next of kin. Before proceeding to the discussion of the legal questions involved, and to enable us to better understand the questions presented, and reach just and proper conclusions, it may be well to state that there is no evidence that this money was paid to the surrogate at the request or by the consent of any of the next of kin, except that Henry Ten Hagen, one of the administrators who paid this money, is also one of the seven next of kin. Neither is there any evidence showing what has become of this money, or that the administrators have made any effort to recover it.

It is urged that this money was paid in to the surrogate's court pursuant to an order made in open court, and that in consequence thereof the administrators are relieved from responsibility for it. The administrators rely upon the instrument which we have quoted, and referred to as a receipt, signed, "Daniel Sherman, Surrogate," as constituting such order, and it is not proved or claimed that there was any other. We cannot concur in the claim that this instrument constituted an order. It does not purport to be such. It contains no injunction, command, or direction, but is simply what it purports to be, viz, a receipt for money, indicating the purpose for which it is received. Neither do we think the payment of this money to the surrogate can be regarded as a payment of the same into court. The statute (Code Civ. Proc. § 2537) clearly points out how, and in what manner, money is to be paid into court, and by necessary inference preludes any other method. To constitute a payment of money into court, under this section of the Code, it must be paid to or deposited with the county treasurer, to the credit of the fund or estate, unless the statute contains special directions for another disposition thereof; and there is no statute containing special directions in this class of cases. Prior to the enactment of this section of the Code, in its present form, in 1882, payment of money into a surrogate's court could be made, if the surrogate, by order, so directed, by paying the same to the surrogate; but the scheme and purpose of the amendment to

that section of the Code in that year was to change this system by making the county treasurer the person to receive, in the first instance, all moneys in this class of cases which were to be paid into surrogate's court, and it eliminated from the section, as it theretofore existed, the right of the surrogate to make an order directing the payment of money unto himself. We know of no right or authority vested in administrators to pay money into court, unless some statute specially permits or directs it, or unless authorized or directed so to do by order of the court; and we are of the opinion that this was not a case where the surrogate, or the surrogate's court, had authority to grant such an order. We shall have occasion to refer to this latter proposition hereafter, in discussing the duties of administrators to make distribution, and will not further discuss the question in this connection.

Stripped of all its verbiage, the sole question to be determined in this proceeding is, did the payment of this money to Surrogate Sherman relieve the administrators from all further liability and responsibility concerning it? Or must they make it good to the next of kin? Upon their appointment, these administrators became vested with the legal title to the personal property of the decedent, as trustees, for the benefit—First, of creditors; and, second, of the next of kin. Redf. Sur. Prac. 417; Blood v. Kane, 130 N. Y. 514, 29 N. E. 994. The duty of administrators is to discover and collect the effects of the decedent, pay the funeral expenses and debts in their legal order, and then distribute the balance, if any, in accordance with the statute of distribution, among those entitled thereto. All this is to be done, however, under the supervision and direction of the surrogate's court, for upon this court is conferred jurisdiction to direct and control the conduct and settle the accounts of administrators, and enforce the payment of debts and the distribution of estates of deceased persons. Code Civ. Proc. § 2472. The statute provides that upon the judicial settlement of the account of administrators, if any part of the estate remains and is ready for distribution, the decree of the court must direct distribution thereof among the persons entitled thereto, according to their respective rights. Code Civ. Proc. § 2743. Then, again, section 2748, Id., which is to be read and considered in connection with the section last quoted, provides:

"The decree must also direct the * * * administrator to pay to the county treasurer a * * * distributive share which is not paid to the person entitled thereto, at the expiration of two years from the time when the decree is made," etc.

Where the persons entitled to share in the distribution are all living, and known, and all of full age, as in the case under consideration, it seems clear to us that under these provisions of the statute a surrogate's court would have no authority to make an order directing the payment of such distributive share into court until the administrator had held the same for two years, and made an effort to distribute in accordance with the directions of the decree. Again, reading and considering these provisions of the statute together, they clearly indicate that the act of making distribution is the primary duty of administrators, and not of the court; and nowhere will any warrant or au-

thority be found for the court taking charge of the funds in the first instance, for the purpose of making distribution, in cases similar to the one under consideration. The court, by decree, determines the rights of the parties, and directs the amount to be paid to each, but the administrators are to make the payment and distribution as so directed. Again, it will be seen, by the section last referred to, that, if the moneys are to be paid into court, they are to be paid to the county treasurer, and not to the surrogate, and the distribution is to be made by the county treasurer under the direction of the court. Now, if administrators, charged as they are in this case with the primary duty of making such distribution, intrust the funds to another, to make such distribution on their behalf, even though such person may be the surrogate, it seems clear to us that such person acts simply as the agent of the administrators, and, in case of his failure to make payment and distribution to those entitled to the funds, they are personally responsible for his default. They cannot delegate this power, even to a surrogate, and thereby relieve themselves from responsibility. The statute does not permit administrators to do this, and no provision of the statute authorizes a surrogate, in his official capacity, to receive moneys or funds from administrators for distribution. We have therefore reached the conclusion in this case that, in receiving the money for the purpose of distribution, the surrogate was acting, in his individual capacity, as the agent of the administrators, and was not acting within the scope of his duties or powers as surrogate; and we accordingly hold that the administrators are responsible for this money, and must be charged therewith upon this accounting.

There is one other question raised by counsel for the administrators which had escaped our attention. It is claimed that the Chautauqua County National Bank was a trust depository designated by the comptroller for the deposit of trust funds, and that this money was deposited therein by the surrogate, and consequently had the effect of a payment into court. It is sufficient answer to this proposition to say that the evidence does not show that this money was so deposited. The only evidence bearing upon that proposition is the indorsement across the back of the check, making the same payable to W. O. Benedict, cashier, and also the fact that the check was paid. The fact that this indorsement appears upon the check would indicate that Mr. Benedict, as cashier, had something to do therewith, but it does not necessarily follow from that fact alone that the moneys were deposited with the Chautauqua County National Bank; but even if they had been placed there, as suggested, to the credit of Sherman as surrogate, we do not think it would relieve the administrators from liability. The next of kin have a right to look to the administrators for their money, and are not called upon to trace it through irregular and improper channels.

A decree, on judicial settlement, will enter in this case, charging the administrators with this money. We are satisfied that the administrators have acted in good faith throughout, and costs will be allowed out of the estate to them, as well as to the petitioner. Decreed accordingly.