In the Matter of the Petition of MARY GLASS to Render and Settle Her Account as Administratrix, etc., of SIMON J. GLASS, Deceased.

Surrogate's Court, Kings County, May 22, 1929.

*Herman M. Frank*, for the petitioner.

*Frederick W. McGowan*, for the National Surety Company.

*William E. Lowther*, for Mackay, Sigler & Taylor, a creditor.

*Benjamin Siegel*, for William Leveen & Co., Stafford Springs Worsted Company and Golden Company, creditors.

*Horace London*, for Morris L. Jacobin, a creditor.

*William Murray*, special guardian.

WINGATE, S.   This proceeding arises upon an order directing the administratrix of the estate of Simon J. Glass to show cause why the final decree of this court judicially settling her account as administratrix should not be set aside and why an order should not be made allowing and giving the claim of Max Mendelson priority on the ground that it is an administration expense and ordering said administratrix to pay said claim.

The basis of this application by Max Mendelson, a creditor of the estate, is that the citation upon the final accounting, which was issued out of this court on January 8, 1929, returnable February 18, 1929, and which was addressed to him, among others, was never served upon him.   He states categorically in the 11th paragraph of his petition that he was never served.   On the other hand, the affidavit of Arthur Cohen, verified February 14, 1929, alleges with equal positiveness such service upon him on February 6, 1929, at 520 Eighth avenue, New York city.   This raises an issue of fact, upon which testimony would, in the usual case, be required. It is believed, however, that a disposal of the present application can be made on the assumption that service was not in fact made. Therefore, for the purpose of this application only, we assume, without deciding, that the allegation of the petition is the fact and that Max Mendelson was not actually served with the citation for the judicial settlement of the accounts of the administratrix.

On this supposition, it is, of course, clear that the decree is void

as to Max Mendelson and that he is entitled to have it opened upon his application. (*Matter of Killan*, 172 N. Y. 547, 553; *Matter of Altman*, 115 Misc. 476, 480.)

The decree being thus opened, all the facts of the administration of the estate, as disclosed by the record, are before the court for disposition of the entire matter as justice requires, in so far as this can be done in the absence of the other interested parties who were present at the time the decree was made but have not been cited on this proceeding. These facts will now be considered.

The decedent, Simon J. Glass, died intestate, in Brooklyn, on September 17, 1927. He was survived by a widow, Mary Glass, and three minor children. Letters of administration were issued to the widow by this court on September 22, 1927. At the time of his death the intestate was engaged in the business of manufacturing women's and children's clothing, and aside from this business he does not appear to have had any property or assets. At the time of his death and prior thereto his wife and creditors seem to have believed that this business was not only solvent, but prosperous and profitable. The record indicates, however, that decedent was actually insolvent at the time of his death. In the hope and expectation of making a living for herself and her children, the administratrix took it upon herself to continue the business. A brief personal contact with the realities of the situation, however, seems to have demonstrated to her the hopelessness of the situation and sometime between the first of November, 1927, and the middle of January, 1928, the exact time not being clearly shown by the record, she discontinued the conduct of the business and thereafter was engaged solely in saving as much for the creditors from the wreck as possible. During this period of continuance of the business, the claims of a considerable number of creditors appear to have been paid in full. In this connection it is of interest to note that claims of this petitioner, Max Mendelson, were paid in the total sum of $682.65, covering the full rental of the premises in which decedent's business was conducted, for the months of September, October and November, 1927. Such rental was not paid for December, 1927, and January, 1928, and it is the rental for these two months, originally aggregating $444.35, now increased to $510.80 by interest and costs as a result of the Municipal Court judgment recovered therefor, which the petitioner here seeks.

The facts respecting the claim of the petitioner herein do not appear from any portion of the record, except from his own petition, but assuming for present purposes that the statements therein contained are correct, it appears that the decedent had leased from the petitioner the premises in question for a period of eighteen

months, beginning June 1, 1927, at a rental of $200 per month. It was on these premises that the business was conducted.

This brings us to a consideration of the legal relations of creditors and representatives resulting from the continuance of the business of a decedent by his executor or administrator.

In spite of the uniform determinations of the courts to the contrary, the erroneous supposition seems to persist in many quarters that a personal representative, as such, has authority to continue the business of the decedent. Such is not and never was the law of this State.

In *Willis* v. *Sharp* (113 N. Y. 586) the Court of Appeals says in part (at p. 589): " By the general rule the death of a trader puts an end to any trade in which he was engaged at the time of his death, and an executor or administrator has no authority *virtute officii* to continue it, except for the temporary purpose of converting the assets employed in the trade into money."

The court then considers the cases in which an executor is expressly authorized by will to continue the business, and after noting that even in such cases he is held to strict accountability in keeping within the letter of his authorization, continues (at p. 591): " It is the settled doctrine of the courts of common law that a debt contracted by an executor after the death of his testator, although contracted by him as executor, binds him individually, and does not bind the estate which he represents, notwithstanding it may have been contracted for the benefit of the estate."

In *Columbus Watch Co.* v. *Hodenpyl* (135 N. Y. 430) the court says (at p. 434): " The right of executors to continue a business, in which their testator had been engaged, has been the subject of much consideration by the courts and the rules of construction as to the powers of executors, in such cases, are well settled. They derive those powers not from their office, but by virtue of the authority in the will. Such an authority must be explicitly found and the language of the will must be resorted to, when a question arises as to the nature of the liability which is incurred in the conduct of a business by executors."

A similar ruling is found in· *Manhattan Oil Company* v. *Gill* (118 App. Div. 17), where the Appellate Division, Second Department, says (beginning at p. 18): " The plaintiff dealt with an administrator whose authority it was bound to know  *  *  * the executor  *  *  * cannot continue the business unless plainly authorized to do so, and in case he does without explicit authority the creditors must look to him individually  *  *  *."

To the same effect are *Matter of McCollum* (80 App. Div. 362, 363); *Saperstein* v. *Ullman* (49 id. 446, 448); *Matter of U. S. Mortgage*

& *Trust Co.* (114 id. 532, 536) and many other cases which might be cited.

Since, therefore, the continuance by an administrator of the business of decedent in the usual course is legally unauthorized to an extent which will cause a rejection of a claim against the estate contracted in the course of such continuance, it follows as an *a fortiori* matter that such claim could not be allowed a preference by any conceivable reasoning.

The claimant in the present instance had an option as to the manner in which he should proceed. If his lease was valid, he could base thereon a claim against the estate for any damages he might sustain by reason of breaches of its terms. His claim in this regard was the same as that of any other claimant who bases his claim on breach of contract made by the decedent. His alternative was to seek to hold the administratrix personally on a *quantum meruit* for use and occupation of the premises for the period during which she continued in occupancy. Obviously he could not proceed on both theories, and since his claim against the estate was filed and allowed and he further emphasized his position of standing on his claim under the lease by suing thereon and prosecuting it to judgment, it would seem that he was now estopped to make any personal claim against the administratrix in this regard. There is also a possible question as to whether the administratrix could have been held personally liable in any event. (See *Matter of Schroeder*, 113 App. Div. 204, 207; affd., 186 N. Y. 537.)

The foregoing is sufficient to dispose of the present application, since under the law the petitioner is clearly not entitled to a preference on his claim. It may be that he may have some rights to a proportional payment on his claim different from that which has been provided for him in the final decree. That question will be determined if properly presented. In this connection it should be noted, however, that, whereas the final decree provided for payment to creditors on the basis of fifteen cents on the dollar, as the proper *pro rata* distribution, this creditor has already received payment of somewhat over fifty per cent of his claim in full, in consequence of a waiver by the administratrix of about half of the commissions due her. It is entirely conceivable that upon a reapportionment of the distributive shares of the creditors this claimant might be called upon to refund a certain portion of the moneys heretofore paid him. (*Woodruff* v. *Claflin Company*, 198 N. Y. 470.) It would also seem that since any such application for a readjustment of distributive shares would affect the rights of all creditors under the decree, they should all be cited upon such petition. (*Matter of Gall*, 182 N. Y. 270.)

Settle order, on notice, accordingly.