In the Matter of the Estate of JOHN S. FROTHINGHAM, Deceased.

Surrogate's Court, Kings County, October 15, 1930.

*Cullen & Dykman* [*Francis L. Durk* of counsel], for the petitioners.

*George O. Redington,* for Morris U. Ely, an executor of the will of Katherine K. Frothingham, deceased, and Augustus L. Williams, Winifred W. Kelsey and Morris U. Ely, persons beneficially interested under the said will, objectors.

*Henry Logan,* special guardian for Eleanor Kent Ely and Barbara Ely, infants.

WINGATE, S. The sole question raised in this accounting concerns that perenially perplexing problem of the proportion of stock dividends properly payable to a life tenant and the amount thereof which should be allocated to the corpus of the trust and thus pass to the remainder interests.

The legal principles involved in such questions are few and easily understood, the sole difficulty being in their concrete application.

Unquestionably the two leading cases on the subject are *Matter of Osborne* (209 N. Y. 450) and *Bourne* v. *Bourne* (240 id. 172).

The latter decision contains several paragraphs, the clear recollection of which is important in this connection. Thus, the court says (at p. 175): " Our main purpose has been to preserve intact the capital of the trust estate, increased or decreased by any normal rise or fall in values, assigning to the life tenant but the income therefrom."

At page 176: " In other cases the directors have declared extraordinary cash dividends, payable from surplus profits, or the effect of their action has been to transfer these profits to capital and to divide them in the form of shares. What we wish to do is clear. These profits may have been made before the trust estate was created. Or after. Or both before and after. Under the first and second contingencies the cash or stock dividends go to the remainderman or to the life tenant respectively. Under the last they should be divided between the two in the proportion that the earnings before bear to the earnings after."

At page 177: " How are we to compute the value of the capital and surplus of the corporation as of the two required dates. * * * The answer depends upon the facts of each case. We must be largely guided by the action of the directors. Values of this or that item of assets may be greater or less than as stated by them on the two critical dates. But if they act in good faith in the exercise of business judgment we may not question their decisions. * * * In the absence of evidence we assume their good faith and that the results reached by them are correct.

" To alter this conclusion the evidence must show more than that their judgment has proved to be erroneous or that the question was debatable. He who criticises their action must prove that it resulted from ignorance or mistake or error as to fact or law. The burden is upon him as to any items which he disputes. But [p. 178] investigation to this extent of the action of directors is always permissible. If in their balance sheet of a certain date they have included among the items of capital and surplus assets in truth previously destroyed, claims previously lost, in making

our comparison we take account of that fact. Their delay in charging off such losses should not control us in apportioning the stock dividend. But we say again this does not permit a review by us of the exercise by the directors of their discretion and judgment. If they believe, in view of the facts before them, that a loss will be escaped or if they charge off a part of such loss believing that the balance sheet represents the salvage value of any claims or demands which the corporation may possess, we will not review their action. No subsequent train of events showing that their judgment was mistaken or their hopes vain will alter this result."

The same rule is stated in a slightly different manner in *Sturgis* v. *Roche* (217 App. Div. 573, 583, 584), modified as to application to certain facts (247 N. Y. 585).

In this case the opposing parties have evinced a laudable desire to conserve the assets of the estate by attempting to avoid the tedious reference usually required for the ascertainment of the facts and with that aim have stipulated certain facts on which they seek a determination of the issues by the court.

The stocks, dividends from which are here in issue, are those of the Fidelity and Casualty Company and the Home Insurance Company. The stipulation recites that both of these companies are required by law to submit to the Insurance Department of the State of New York certain reports concerning their respective financial conditions, which reports are made in a manner and form " provided by law and embody deductions or additions not shown upon the books of the corporation other than upon the books of the corporation containing its figures and reports for the State Insurance Department." The stipulation further sets forth that among the assets required to be eliminated from such Insurance Department reports in the case of the Fidelity and Casualty Company, was an item of $88,248.69 due from the Munich Reinsurance Company, which was deducted from the computation because " for State insurance purposes the insurance company is not permitted to set up as an asset an amount due from another insurance company over which the State has no jurisdiction." It is further stipulated that this asset was duly carried as a valid asset on the books of the company and its worth is in no way impugned.

On the other hand, it is stipulated that the general books of the company carried securities owned by it at the cost figure of $8,669,152.32, while the actual value of such securities on the date in question was only $8,159,499.72, or $509,652.60 less.

The stipulations of these two matters which inevitably establish them as incontrovertible facts, have the inevitable effect of destroying the value of the Insurance Department statements on the one

hand and the book statements on the other as proper bases for the present determination.

The question of whether or not a particular asset item possesses intrinsic value from an ordinary business standpoint is quite a different one from that of whether the corporation has sufficient clear assets of a certain required character to authorize the State Insurance Department to permit it to conduct business in this State. The question is somewhat remotely analogous to the possession by a trustee limited to authorized investments of both legal and non-legal holdings. The latter may not be taken into consideration in determining a question of devastavit, but their presence would obviously not be tantamount to a determination that, to the extent of such holding, he was without any assets. The exclusion of such items in the Insurance Department figures is merely a holding that in a determination as to whether the company had a requisite amount of assets of a specified kind, assets which were not of such kind, possessed no relevancy and should, therefore, not be included. It follows, therefore, that the basic figures to be used in the calculation cannot be $11,858,730, as contended for by the objectors.

On the facts stipulated, the figure of $12,734,670, used by the accountants, is open to equal objection and falls squarely within the language of *Bourne* v. *Bourne* (*supra*), since in this statement is included $509,652.60 by which the market value of securities held had depreciated. This is an absolutely ascertainable fact which has been determined by the stipulation and is not a question coming within the discretionary power of the board of directors as might be the case of a pending unliquidated and contested claim.

The third set of figures set forth in the stipulation respecting the Fidelity and Casualty Company amounts to $12,227,816.42 and represents " Monthly Financial Statements," which are said to be a compilation used by the officers and directors of the company in the conduct of the business. The stipulated facts, however, set forth that whereas the Insurance Department reports required a deduction of $141,566.31 for estimated Federal and State taxes, these statements included no such item. This omission, on the stipulated facts, obviously made the resulting figure of the " Monthly Financial Statements " incorrect, since unquestionably on December 31, 1914, the date as of which the statements were compiled, sizeable amounts were accrued obligations on this account.

The court is, therefore, unable to comply with the request of the parties that it determine which of the three sets of figures is correct and should be employed. In its opinion all three sets are incorrect and should not be employed for the specific reasons stated.

While determining that the specific items pointed out render the respective statements improper criteria for the allocation, the court expressly refrains from deciding whether or not such statements contain further items which would render them additionally objectionable.

The facts stipulated respecting the dividends upon the stock of the Home Insurance Company are entirely inadequate to permit any decision in respect to that question.

It may be possible for the parties to come to some agreement in solution of the questions as a result of the foregoing expression of the views of the court. The only alternative is a reference, in which all pertinent facts can be developed.

Proceed accordingly.