In the Matter of the Estate of JAMES F. RONEY, Also Known as J. FRANK RONEY and FRANK J. RONEY, Deceased.

Surrogate's Court, Kings County, June 9, 1933.

*Robert W. Maloney*, for the executors.

*Van M. Logan*, for Julia C. Mahoney, residuary legatee, respondent.

WINGATE, S. The sole question here presented relates to the amount of the commissions to which the executors are entitled. The facts pertinent to a decision have been stipulated. On principal account, they received property and securities, the value of which for commission purposes is stipulated to have been $79,673.97, and also 100 shares of Bethlehem Steel Company stock and 220 shares of International Harvester stock. The two last-named items, at the time of their receipt by the executors, had a value of $36,530. On July 29, 1930, they were delivered and accepted in kind by the residuary legatee. They were receipted for at the value which they possessed at the time of their receipt by the executors, although they were concededly then worth only $27,050. The present value of like securities is $6,995. The executors also received $9,159.51 on income account.

The final element of the problem respecting principal relates to the settlement of a claim by one of the executors. She filed a demand against the estate alleging that all of the stocks and bonds in the hands of the executors were hers by reason of an alleged gift of them to her by the decedent. This claim was compromised by the residuary legatee by the payment from the estate funds of $25,000 in trust to Kings County Trust Company. The income from this trust was payable to the claimant for life with remainder to the residuary legatee.

In view of the stipulation of the foregoing facts, certain portions of the memorandum of the executors claiming commissions on greater sums, are incomprehensible. It is primary that when the facts upon which a determination is to be based are formally and validly agreed upon between the parties, such agreement is conclusive and the facts stated are not subject to subsequent variation. (*Oliver* v. *Bennett*, 65 N. Y. 559, 560; *Casey* v. *Leslie*, 12 App. Div. 34, 38, 39; *Twin Realty Corp.* v. *Glens Falls Portland Cement Co.*, 225 id. 515, 517; *Matter of Frothingham*, 138 Misc. 243, 245.)

In determining executorial commissions on principal, it has been held by all tribunals passing upon the question that income cannot be added to principal for the purpose of increasing the total base sum to the $100,000 required before a full commission is allowable to each executor. (*Matter of Grossman*, 92 Misc. 656, 658; *Matter of Freeman*, 105 id. 423, 425, 426.) (See, also, *Matter of Willets*, 112 N. Y. 289, 298.) The public policy underlying this rule is

obvious. Were it otherwise executors would have it in their power in a large proportion of estates to increase their own remuneration by the simple expedient of postponing by hook or crook the evil day when they were compelled to turn over the principal assets of the estate to those justly entitled thereto. The executors, jointly, are entitled to a single commission on the income received and paid out by them, this commission to be computed separately, and not combined with the principal computation.

Turning now to the question of the claim by one of the executors against the estate, and its compromise, the status of the claimant and her relation to the estate are conclusive as to the nature of the settlement transaction. Had she been a stranger to its administration, it might have been questionable as to whether the compromise benefit which she secured was not properly deductible from the assets of the estate in view of the fact that her contention was to the effect that all securities in the hands of the fiduciaries were her individual property as the result of an *inter vivos* gift. In the present situation, however, no inference is possible that such compromise and settlement was an act by the executors, since section 212 of the Surrogate's Court Act provides that " an executor or administrator shall not satisfy his own debt or claim out of the property of the deceased until proved to and allowed by the surrogate." This claim was neither thus proved nor allowed and no inference will be indulged that the executors did an unlawful act. The inevitable alternative is that this settlement was an independent transaction consummated by the residuary legatee on her own account and for her own ultimate benefit. This is further indicated by the wording of the stipulation in this regard, which recites that in effectuating the settlement, " The residuary legatee directed the executors to deposit " the specified settlement sum " of moneys belonging to the estate, *to be charged against said residuary legatee.*" (Italics not in original.) The effect of the transaction was, therefore, in all respects the same as if the sum had been paid over to the residuary legatee on account of her distributive share and used by her for effecting the settlement. The propounded question in this connection must, therefore, be answered that this settlement sum is to be considered a part of the assets of the estate.

The final question concerns the valuation for commission purposes of the securities delivered to the residuary legatee in kind on July 29, 1930. Their stipulated value on that date was $27,050, although the recipient receipted for them as possessing the value as of the date of death, namely, $36,530. Since the distributee was the residuary legatee, the insertion of the value in the receipt was

pure surplusage. Even if, by any chance, the recital might be deemed to possess any binding effect on the distributee, it cannot foreclose the court from an examination of the verities as demonstrated. Under the terms of the statute no greater commissions can be allowed than the specified percentages on money or money's worth. The opposing contention, that the value as of the date of accounting shall be adopted, is equally untenable. The executors could have sold the securities on July 29, 1930, for $27,050. Instead of having them sold, the distributee elected to receive them in kind, and the transaction must, for all purposes, be treated exactly as if the securities had then been sold, and the avails distributed to her. It follows, on the facts stipulated, that the executors are entitled to receive commissions on a total principal of $106,723.97, and on income, to be separately computed, on $9,159.51.

Proceed accordingly.