In the Matter of the Estate of CHARLES H. EBBETS, Deceased.

Surrogate's Court, Kings County, October 23, 1933.

*Conroy & Hardy*, for Joseph A. Gilleaudeau and Genevieve Gilleaudeau.

*Gray & Tomlin*, for the executors.

*Logan & Aronoff*, for the petitioners Charles H. Ebbets and Anna Marie Ebbets.

*Frederick A. Keck*, special guardian.

*Ralph Weller*, for Milton M. Eisenberg.

*Charles A. Webber*, for Charles H. Ebbets, Jr.

*Stephen C. Fordham*, for Ada Ebbets.

*Winthrop, Stimson, Putnam & Roberts*, for the National Iron Works.

*Alfred Roelker*, for Sarah G. Lawton.

*George A. Logan*, for Marie Ebbets Cadore.

WINGATE, S. The question herein presented concerns the right of trust beneficiaries, upon the examination of fiduciaries prior to the filing of objections to their account, to require such fiduciaries, who are officers of an independent, operating, incorporated business, to produce the books and records of such corporation on their examination.

The present testator, Charles H. Ebbets, was, prior to his death, the owner of a large proportion of the capital stock of the Brooklyn National Baseball Club, Inc. He died on April 18, 1925. By his will, which was admitted to probate in this court on May 31, 1925, he appointed his widow, Grace Slade Ebbets, his son-in-law, Joseph A. Gilleaudeau, and Mechanics Bank, as executors and trustees. On February 8, 1929, the Mechanics Bank was merged into the Brooklyn Trust Company, which thereupon continued its duties under the will. The accounts of the fiduciaries have been twice settled by this court; the first occasion being by decree dated December 30, 1927, and the second, by decree of July 26, 1930, the latter accounting bringing the transactions of the fiduciaries up to December 31, 1929.

Pursuant to a petition filed by Charles H. Ebbets, Jr., and Anna Maria Ebbets Booth, two beneficiaries under the will, an order was made by this court on June 15, 1933, directing a further accounting and the trustees pursuant to such order duly filed their account one month later. This account recites that the chief asset of the estate consists of an ownership of one-half of the outstanding capital stock of the Brooklyn National League Baseball Club, Inc., and a like proportion of that of the Ebbets-McKeever Exhibition Co., Inc., the second named concern owning the athletic field and baseball park known as Ebbets Field, which is leased to the baseball club.

On August eighteenth the petitioners in the compulsory proceeding obtained an order directing the trustees to show cause why they should not submit to examination in connection with their account theretofore filed. In addition to the usual objects of such examination, the petitioners by this process seek to examine the trustees in respect to their acts " in their derivative capacity as directors and officers of the two aforementioned corporations," and further seek an order " requiring Joseph A. Gilleaudeau and Harry M. De Mott to produce the books, records, correspondence, vouchers, memoranda and other documents and instruments of every kind and nature connected and relative to the management of the affairs of the Brooklyn National League Baseball Club, Inc., and the Ebbets-McKeever Exhibition Co., Inc." The right of the petitioners to this latter relief forms the issue of the present proceeding.

The pertinent facts respecting the connection of Messrs. Gilleaudeau and De Mott with these two independent corporations are not in issue. Gilleaudeau first became the secretary of both corporations on April 25, 1924, and was elected a director of both on June thirtieth of the same year, which dates, it will be noted, were respectively approximately a year, and ten months, prior to the death of the testator. He has continued as a director up to the present time and continued as secretary from his first election to that office, prior to the death of the testator, up to September 27, 1932, when he was elected vice-president and treasurer.

Mr. De Mott became a director of the corporations on February 8, 1930, succeeding Wilbert Robinson in that capacity, and on September 27, 1932, was elected vice-president of the baseball club. Mr. De Mott has for some time been a director of the Brooklyn Trust Company, one of the accounting trustees, his only office in that corporation, however, being that of a vice-chairman of the board of directors.

At no time since the death of the testator has the estate owned a majority of the stock of either corporation, the holdings throughout being exactly one-half of the stock of each. The remaining half is owned in equal parts by the estate of Edward J. McKeever and by Stephen W. McKeever or members of his family, individually. Furthermore, at no time since the death of the decedent have persons in any way connected with the administration of the estate constituted a majority of the boards of directors of such corporations. The personnel of the boards has always been identical. Those elected on May 25, 1925, were Wilbert Robinson, Stephen W. McKeever, James A. Gilleaudeau, John Scholl and Frank B. York. On February 8, 1930, Harry M. De Mott succeeded

Wilbert Robinson and Walter F. Carter succeeded John Scholl, the others remaining the same. The next change occurred on September 27, 1932, at which time James A. Mulvey succeeded Frank B. York. Since the filing of the petition now under consideration Walter F. Carter has resigned. No one has as yet been elected to fill his place.

The only additional pertinent facts relate to the action of the Ebbets-McKeever Corporation, which, in 1931, enlarged the capacity of the grand stands upon its park and for that purpose increased its existing mortgage indebtedness of $150,000 to the Brooklyn Trust Company to the sum of $500,000. The propriety of the action of the trustees of this estate in the voting of the stock held by them in favor of such action was the subject-matter of a proceeding instituted by them in this court for advice and direction (the opinion in connection therewith being reported in 139 Misc. 250).

The right of the petitioners in the present proceeding to require a full disclosure of all of the business transactions and records of these corporations is earnestly contested, in connection with which there has been submitted to this court a considerable number of newspaper clippings indicating the somewhat unusual public interest in the affairs of the baseball club and the rather sensational manner in which a section of the press seems inclined to view its affairs. One of the replying affidavits further contains the following statement: " The business of the Brooklyn National League Baseball Club, Incorporated, is of a highly competitive nature. It is a member of the National League of Professional Baseball Clubs, competing with seven other clubs in such league. It is extremely desirable from a business standpoint that its affairs be not made known to its competitors any more than can be helped. Reference is hereby made to the annexed affidavit [in which eleven newspaper clippings, several of them of a column or more in length is incorporated] with respect to the publicity which has occurred in this estate. It is desirable that any examination of the executors be so limited that the rivals of the club be not informed of its affairs."

The only pertinent statutory enactments relating to the rights herein asserted are contained in sections 260 and 263 of the Surrogate's Court Act. The former relates particularly to a compulsory, and the latter to a voluntary, accounting proceeding. The applicable wording of section 260 provides for the making of an order " directing him [the fiduciary] to account within such time, and in such a manner as the surrogate prescribes, and to at end, from time to time, before the surrogate, for that purpose." It is apparent

that the only action by the fiduciary which is contemplated by this language is the actual filing of an account of his dealings with the assets of the estate, since the authority conferred upon the surrogate for directing attendance " for that purpose," obviously refers to the previous power to direct the fiduciary " to account." While it might be argued that the discretion implied from the authority to direct the accounting " in such a manner as the surrogate prescribes," might be construed to authorize the inclusion in the order for accounting of a provision compelling the fiduciary to submit to oral examination, such an interpretation seems an unnecessary straining of the natural connotation of the statutory phraseology. Furthermore, where, as in the present case, the order for the accounting merely directed the filing of and proceedings to settle the account without more, a compliance with these directions would appear to exhaust the judicial authority in so far as it is conferred by the wording of section 260.

The real and presumably only authority for the examination here sought is contained in the provisions of section 263, the first two sentences of which read: " On the return of a citation, issued as prescribed in the last section, the surrogate must take the account, and hear the allegations and proofs of the parties, respecting the same and make such order or decree as justice requires. The executor, * * * or trustee may be examined under oath by any party to the proceeding as to any matter relating to his administration of the estate or fund."

While the inclusion of the second sentence of this section with the first, which relates to a voluntary accounting, may involve the question in some doubt, the absence of any direct statutory authorization for an examination of the fiduciary in a compulsory proceeding, and the obvious identity of the need therefor in both, indicates the probability of the legislative intent to make the second quoted sentence of section 263 equally applicable to both compulsory and voluntary proceedings. However this may be in a case where a proceeding remains involuntary from inception to conclusion, it is obvious in the present case that the provisions of section 263 govern the application, since on August twenty-eighth an order was made and entered consolidating the original compulsory proceeding with a subsequent voluntary one.

The nature of the examination contemplated by the second sentence of this section " is not an examination before trial or similar in nature to it." (FOLEY, S., in *Matter of Van Volkenburgh*, 128 Misc. 819, 822; affd., on this opinion, 226 App. Div. 10; affd., 254 N. Y. 139.) Its provisions supply the sole remedy available to a person interested in an estate accounting, and exclude

the application of any other remedy in the nature of an examination which may be found in the Civil Practice Act. (*Matter of Van Volkenburgh*, 128 Misc. 819, 822; 226 App. Div. 10, 13; *Matter of Bretsch*, 128 Misc. 219, 220.) The *Van Volkenburgh* opinions also establish that " there is no requirement as to the order of procedure. Objections may be filed after the examination, or the examination may follow the filing of objections " (p. 822).

The scope of the examination contemplated in this section is expressly stated by its terms. This is permitted " as to any matter relating to his administration of the estate or fund." This, of course, means merely that an interested party may examine " the accounting party as to his management of the estate." (*Matter of Van Volkenburgh, supra,* p. 823.) In determining whether given acts properly fall within the category of " management " of an estate and thereby become subject to this inquisitorial scrutiny, it will be of aid to analyze the usual duties of an estate fiduciary. The nature and extent of the functions of executors and trustees are not open to question. The former are appointed merely for the purpose of " collecting and reducing to possession the assets of the estate and, after paying debts, to have the balance in hand for distribution." (*Matter of Union Trust Co.*, 70 App. Div. 5, 9. See, also, *Matter of Te Culver*, 22 Misc. 217, 221; *Matter of Hibler*, 78 N. J. Eq. 217, 219; affd., 79 id. 230.) A trustee, on the other hand, is a fiduciary whose powers are strictly limited by the instrument of appointment to the holding of specific property, to its use in a prescribed manner, and to the payment over to designated persons of the principal and income thereof in the manner particularly set forth in the instrument creating the trust. Except where express and explicit powers to that effect are granted by the instrument of appointment, neither fiduciary has the power or authority to conduct a business. (*Willis* v. *Sharp*, 113 N. Y. 586, 589; *Columbus Watch Co.* v. *Hodenpyl*, 135 id. 430, 434; *Matter of Glass*, 134 Misc. 291, 294; *Matter of Gorra*, 135 id. 93, 98; *Matter of Stulman*, 146 id. 861, 874.) Such an act is, therefore, not properly to be included within the contemplation of the terminology of the statute respecting estate " administration " in the absence of a clear demonstration that it was actually performed by the fiduciary as such.

The testator in the present instance granted no authority to his fiduciaries to engage in business, their sole semi-pertinent authorization being to retain, for the period limited in the will, securities owned by the testator at the time of his death. Prominent among such securities were the stocks of the baseball club and of the exhibition company, but in this respect the situation was

analogous to that disclosed in *Matter of Fidelity Loan, Trust & Guar. Co.* (23 Misc. 211), in which the court said (at p. 214): " There was no duty incumbent on the executors to run the railroad, because, among the assets of the testator, were many bonds of that road. Their duty was complete by simply holding the stocks and bonds, voting thereon and receiving any interests or dividends that might be paid. There was no obligation on the executors to manage the affairs of the railroad because the estate was a large holder of stocks and bonds. The management of its affairs was entirely different and separate from any duties the Fidelity Company and Mr. McCormick were called upon to perform as executors and trustees."

It may well be true that if a testamentary fiduciary were to conduct a business on behalf of the estate in spite of an absence of authority to that effect and in direct violation of the explicit rules of law inhibiting such action on his part, his acts in this regard would be subject to preliminary examination under section 263 in spite of the fact that it was conducted under the cloak of a separate corporate entity. However, in any determination as to whether, as a matter of fact, he had so done, the burden of an affirmative demonstration would be imposed upon the person who alleged such action, since there is a strong inference of fact, frequently loosely termed a presumption (*Matter of Callahan*, 142 Misc. 28, 35, 36; affd., 236 App. Div. 814; affd., 262 N. Y. 524), that the fiduciary has acted properly and not in contravention of law. (*Matter of Roney*, 148 Misc. 70, 72; *Matter of Chisholm*, Id. 158, 159; *Matter of Spanier*, Id. 879.)

The turning point in the decision of the question at bar is, therefore, purely one of fact as to whether the acts of Mr. Gilleaudeau and Mr. De Mott in connection with their offices and directorships in the baseball club and the exhibition company were performed in their fiduciary capacity or purely as individual members of the community. If they were done in the former, they might be made the subject of examination, on the ground that they formed a part of the acts of administration or management of the estate. If in the latter, they do not fall within the terminology of section 263 of the Surrogate's Court Act, and are not proper subjects for inquiry at this time and in this manner.

It is, of course, obvious that the mere fact that a person occupies the position of an estate fiduciary does not result in coloring his entire life and actions to the exclusion of all his other rights and interests. He still breakfasts, performs his daily tasks and retires for the night as an individual, and these private activities are as immune from the prying eyes of the beneficiaries of the estate of

which he is a fiduciary as if they had been performed by an entirely different person. As a matter of legal fact, he is not subject to scrutiny as a fiduciary except as to matters which are performed strictly in the management of the estate and any knowledge or information which he may possess or acquire in his extra-fiduciary relations are as privileged as are his breakfast menu or his nocturnal habits.

The existence of this dual personality has received frequent and uniform recognition.

In *Rathbone* v. *Hooney* (58 N. Y. 463) the court said (at p. 467): " It is also a conclusive answer to the claim that the judgment in the foreclosure suit is an estoppel, that a judgment against a party sued as an individual is not an estoppel in a subsequent action in which he sues or is sued in another capacity or character. In the latter case he is in contemplation of law a distinct person and a stranger to the prior proceedings and judgment." (Citing authorities.)

The same ruling in substantially the same language was made by the Court of Appeals in *Collins* v. *Hydorn* (135 N. Y. 320, 324, 325). The pertinent language in this regard to be found in *Leonard* v. *Pierce* (182 N. Y. 431, 432) reads: " It has been repeatedly held that persons suing or being sued in their official or representative capacity are, in contemplation of law, distinct persons, and strangers to any right or liability as an individual, and consequently a former judgment concludes a party only in the character in which he was sued. If the judgment was for or against an executor, administrator, assignee or trustee, it would not preclude him, in an action affecting him personally, from disputing the findings or judgment, although the same questions are involved." (Citing authorities.) (See, also, *Williams* v. *Fischlein*, 144 App. Div. 244, 245.)

The practical effect of this dual personality has been made manifest in many decisions respecting matters similar to that here in issue.

In the recent case of *Pardee* v. *Mutual Benefit Life Ins. Co.* (238 App. Div. 294), which was a suit by an executrix to collect the amounts of certain policies of insurance on the life of her testator, the defendant sought to examine the plaintiff in respect to the mental condition of the deceased as bearing upon a defense of suicide. In reversing an order permitting examination in these particulars, the court said (at p. 296): " Mrs. Pardee, as executrix of her husband's estate, and Mrs. Pardee, individually, are, in the contemplation of the law, two separate and distinct individuals, although they are one and the same person. One suing or being

sued in his official or representative capacity is, within the eyes of the law, a stranger to any right or liability which he possesses as an individual."

Again (at p. 297): " With a minor exception, any knowledge which she has concerning the matters on which it has been held she can be examined she possesses as an individual, and not as executrix of decedent's estate.

" * * * if the action is brought by some person in his representative capacity he must be examined in that capacity, and not as an individual."

The decision is not only amply supported by reason and the authorities cited therein, but is wholly consonant with the general tenor of the decisions since early times, portions of the language of two of which may be worthy of note.

In *Opdyke* v. *Marble* (44 Barb. 64) the court says (at p. 68): " It appears from the moving papers that the books &c. of which a discovery is sought, belong to a corporation called ' The World Company,' and not to the parties who are defendants in the action, either real or fictitious.

" The individual defendants, against whom the proceeding is instituted, can not be compelled to produce account books, over which they have no control, except as agents of the corporation. It is true the plaintiff alleges that the corporation is a sham, but that is a question that cannot be settled on a motion. *Prima facie* the conclusion must be otherwise."

In *Morgan* v. *Morgan* (16 Abb. Pr. [N. S.] 291) the opinion (at p. 296) reads as follows: " nor can its agents or officers in their individual capacities be compelled to discover or produce the books of a corporation over which they have not the absolute control and right of disposition at their own will and discretion." (See, also, *New York Assets Realization Co.* v. *Pforzheimer*, 158 App. Div. 700, 703; *Murdock* v. *McCutchen*, 154 id. 854, 855.)

That the possession of knowledge or the custody of documentary evidence by a person who chances to be a fiduciary of an estate does not warrant his examination in respect thereto or an order requiring his production thereof, respectively, if it is not germane to the question of his management of the estate affairs, is well established.

In *Matter of Underwood* (217 App. Div. 128) the question decided concerned the right of persons conducting an examination under section 263 of the Surrogate's Court Act, to compel the accountants to produce books of the decedent which were admittedly in their possession. In reversing an order directing their production, the court says (at p. 129): " The right of a party to examine an executor

upon the return of a citation in proceedings for a judicial settlement is strictly limited in subject to ' any matter relating to his administration of the estate or fund.' Concededly the books sought to be examined record no fact in reference to the administration of the estate. It is impossible that they should, since they record facts only which occurred before the death of the testator."

Similarly Surrogate FOLEY in *Matter of Davis* (120 Misc. 457) pointed out with characteristic clarity that an examination of an administratrix under section 263 could not properly embrace questions concerning payments of life insurance under policies, the proceeds of which were due her as an individual. (See, also, *Matter of Freligh*, 42 Misc. 11, and *Boorman* v. *Atlantic & Pacific R. R. Co.*, 17 Hun, 555; affd., 78 N. Y. 599.) The result of these and similar authorities is to establish that in an examination of an accounting party, the inquisitor is debarred from inquiring into any matters, *first*, which are known to the accountant only by reason of some relationship other than that of fiduciary of the particular estate, and, *second*, which, although known to him in such fiduciary capacity, have no direct bearing upon the issues respecting his management of the assets of the estate.

It follows that for the petitioners in the present proceeding to succeed in their contention, it must be established by them, as, indeed, it is alleged in their petition, that Messrs. Gilleaudeau and De Mott become directors and officers of the baseball club and the exhibition company by reason of their connection as fiduciaries of this estate, and further, that their acts in such capacities were performed as fiduciaries of the estate. As to both demonstrations the burden of proof is on the petitioners as the moving parties, but in respect to the second, this burden is especially onerous by reason of the negative factual inference or presumption hereinbefore noted. The facts being admitted, the determination becomes one of law.

In respect to Mr. Gilleaudeau, the facts, far from proving the affirmative of petitioners' contention, definitely demonstrate the negative. He did not become an officer or director by reason of his connection with the estate for the obvious reason that his official activities in respect to both corporations in these capacities antedated the death of the testator and *a fortiori* preceded his qualification as an executor under the will of the latter. The inference is just as strong that his original election was the result of his business qualifications and personal characteristics as that it occurred by reason of the influence of the testator. The same is true of his continuance in office after the death of the latter. Wherefore it cannot be said that the petitioners have in this respect

sustained their burden of demonstrating that his connection with the companies at any time bore any relation whatsoever to his fiduciary position.

This is equally true of Mr. De Mott. In the first place, the mere fact of his office as vice-chairman of the board of directors of the Brooklyn Trust Company, the coexecutor, creates no presumption that he ever performed any fiduciary duties in connection with this estate. Even if he did, however, the reason for his injection into the corporate affairs of the baseball club and the exhibition company after approximately five years subsequent to the testator's death, does not raise any inference that he became a member of the boards as a representative of the estate. On the other hand, he, an official of Brooklyn Trust Company, did become a member of these boards a comparatively short time before the corporations increased the sum borrowed from the Brooklyn Trust Company from $150,000 to $500,000. The resulting inference is, therefore, far stronger that his official connection with the two corporations was as the representative of Brooklyn Trust Company, the creditor of and the lender to them, rather than as the representative of the trust company as fiduciary of this estate.

The final pertinent consideration in this connection is that at no time was the estate in a position to exercise control over the corporations since at no time did it own a majority of their stock or possess voting control. Furthermore, even were it granted that Gilleaudeau and De Mott were both on the boards as estate representatives, they were always, from the death of the testator up to the date of the filing of the present petition, minority representatives thereon and were, therefore, unable to conduct the affairs of the corporations as an adjunct to those of the estate.

Even were a demonstration made that a fiduciary of an estate possessing less than a controlling interest in a corporation was elected to the directorate thereof in consequence of his representation of the estate, it would indeed set a dangerous precedent to hold that by such act the intimate business affairs of the corporation might be made public at the caprice of any minor legatee of the estate. Such act of inclusion of the fiduciary would in such a case be merely an evidence of good faith on the part of the corporation, permitting the estate representative to ascertain at first hand that the corporate affairs were honestly conducted on behalf of all stockholders indiscriminately including those of his trust. Such act would, however, not make the participation by the estate fiduciary in the business transactions of the corporation a part of his administration of the estate. Like his associates in the conduct of the corporation, he would assume a fiduciary relation-

ship to all stockholders and creditors of the corporation alike (*People ex rel. Manice* v. *Powell*, 201 N. Y. 194, 201; *Continental Securities Co.* v. *Belmont*, 206 id. 7, 16; *Kreitner* v. *Burgweger*, 174 App. Div. 48, 52), which would prevent any partiality to those interested in the estate in his charge and likewise preclude a disclosure of any information obtained in that capacity to one whose sole claim upon him arose from the estate fiduciary relationship.

A different situation might well exist where the estate fiduciary assumed and exercised control of the corporation by reason of controlling stock holdings belonging to the estate, but even here a delicate question would arise if independent third parties possessed minority interests in the corporation. In such a case it is clear from the results of such cases as *Matter of Auditore* (249 N. Y. 335); *Matter of Kirkman* (143 Misc. 342) and *Matter of Gerbereux* (148 id. 461) that the fiduciary may be held liable in a direct proceeding for any depreciation in value of the stock held by the trust which has occurred as a proximate result of his control of the corporation. These and similar precedents have, however, no bearing upon the question at bar, which is not one of substantive right but merely of procedural remedy. Where such a question of injury by the exercise of control is at issue, the corporation may unquestionably be compelled to give evidence to the fact, like any other third party witness, but there is no more right to examine a witness before trial in the Surrogate's Court than exists in a court of general jurisdiction.

The examination of the fiduciaries will be permitted, but only in respect to matters relevant to their administration of the estate as hereinbefore defined.

Proceed accordingly.