## OGILVIE *vs.* OGILVIE.

### *In the matter of the accounting of the Executor of* ANN OGILVIE, *deceased.*

IF the executor be examined by an adverse party under oath, for the purpose of charging him, a portion of his statements tending to charge him, cannot be taken separate from an accompanying explanation operating in his favor.

A *donatio causa mortis* is an executed gift, revocable or conditional on the contingency of expected death, and is distinguished from an irrevocable gift.

Interest is not ordinarily chargeable against an executor or administrator for the period of a year after the issuing of his letters, especially if the funds of the estate have been kept separate and not mixed with his own. But at all times, if he has employed the funds, he will be charged with interest on the ground of the use of the assets for his own benefit.

> T. C. PINCKNEY, *for Executor.*
> T. C. T. BUCKLEY, *for next of kin.*

THE SURROGATE. The gift by the deceased to her son William, the executor, of a trunk, containing some $500,

three or four weeks before her death, is, I think, sufficiently proved. Such transactions ought always to be closely scrutinized, and the facts upon which they depend, clearly established. The evidence upon which the executor is sought to be charged for this sum, was drawn from him upon his own examination at the instance of the adverse party, and the statement cannot be so dislocated, as to separate the part which bears against him, and thereon establish his liability; and reject that which accompanies and explains it, and operates in his favor. In *Blount* vs. *Burrow*, the donee was the executor of the donor, and being examined before the Master, to charge him with the receipt of four India bonds, he stated that the testator shortly before his death, " gave and delivered to him four India bonds, for £100 each, for his own use, to enable him to carry on a suit, &c." It was held that the examination was good evidence of the gift, and was to be taken in discharge of the executor. (1 *Vesey, jr.*, 546.) The same point was adjudicated by Lord Thurlow, in *Hill* vs. *Chapman*, 2 *Bro. C. C.*, 612, who there sustained a gift *mortis causa*, upon the like testimony of an executor before the Master. (*Ambler*, 589, 4 *Bro. C. C.*, 72, 74.) But in the present case, the executor is corroborated by a witness, who was present at the time, substantiates the essential words of the gift, and shows in fact that it was immediately executed under the express orders of the testatrix, by a delivery of the thing given,—an actual and immediate change of possession. There is nothing in the testimony to show this was a proper donation *mortis causa*. A *donatio causa mortis* is an executed gift, revocable, or conditional on the contingency of expected death. (*Just. Inst. Tit.* 7, *De Donationibus*.) There is not the slightest evidence favoring the idea, that the gift in question was otherwise than a pure irrevocable gift, *inter vivos*. If it were otherwise, I think it would make no difference in the result.

The only remaining point, relates to the propriety of

charging the executor with interest. The testatrix was an aged lady, not engaged in any business, and free from all debt or liability. She left at her decease, in cash, $5741 53, and the executor collected $1127 25, for rents due, and in March, 1849, $1143 50, the amount of an outstanding bond. She died, December 27, 1848. The executor states, that these moneys were deposited to his individual credit in the Mechanics' Bank, and that he believes he has always kept on deposit there, a sum equal to the two-thirds belonging to the other legatees, he himself being interested to the extent of the remaining third. Even according to this statement, he has been using his proportion of the fund, while the others have not enjoyed that advantage. But his check book and bank book, the former covering only a portion of the present year, show that he is mistaken in his supposition; that his account has not only been frequently drawn down below $8000, and during the months of June and July last, on nine several occasions, below two-thirds of that amount, but at one time, his balance has not exceeded $700, though this lasted for a very brief period. It also appears that the executor has been in the habit of getting large discounts at that bank. Now, it is frequently necessary for an executor or administrator to keep large sums in his hands, to answer the exigency of the testator's or intestate's affairs, particularly during the first year, and for that reason, ordinarily, interest should not be charged against him during that period. It follows that if the money be kept separate and not mixed with his private funds, interest will not, as a general rule, be charged in such a case. But even where the executor is justified in retaining the assets, if they have been employed by him to his own advantage, he is chargeable with interest on the ground that he cannot be allowed to make profit out of the estate. The English rule appears to be, that an executor who is a trader, and deposits the funds of the estate at his bankers, in his own name, thus acquiring credit and increasing the balances in his favor, must thereby be considered as having

used the money for his own benefit, and is to be charged with interest. (1 *Bro. C. C.*, 285 ; 11 *Vesey*, 61 ; 1 *Russ. C. C.*, 151 ; 1 *Coll.*, 177.) Without going to that extent where the fund has been deposited, but in fact kept intact, I should certainly be inclined to apply the principle—where a part of the fund has confessedly been used, and at times, nearly the whole of it is shown to have been drawn out of the bank,—where the executor seems to have been somewhat actively engaged in the business of loaning money, and has had frequent and large discounts at the bank. Besides, I perceive no reason why so large a sum should have been kept dead in the hands of the executor. If it was for his own convenience, then he should pay for the privilege, and not receive profit or advantage from a trust the law has placed in his hands. He does not allege suspicion that the testatrix was in debt, or that there was any likelihood of the existence of any demand against the estate. He has not even taken the precaution to advertise for creditors, does not now advance the idea that he may be endangered by his neglect to do so ; and he could have just as well distributed the bulk of the estate among the parties entitled, eighteen months ago, and with as little risk or danger of liability, as he can now. Under all the circumstances, then, it seems to me quite reasonable to charge him with interest, from the period of six months after the death of the testatrix, upon the cash balance in his hands at that time.