In the Matter of the Judicial Settlement of the Account of Proceedings of FLORENCE BAIZ VAN VOLKENBURGH, as Administratrix, etc., of THOMAS S. VAN VOLKENBURGH, Deceased.

SUSIE VAN V. HUNTINGTON, Appellant; FLORENCE BAIZ VAN VOLKENBURGH, Respondent.

First Department, April 5, 1929.

*J. Ard Haughwout* of counsel [*Arthur G. H. Power, Jr.*, with him on the brief; *Esselstyn & Haughwout*, attorneys], for the appellant.

*Edgar J. Nathan* of counsel [*Michael H. Cardozo, Jr.*, with him on the brief; *Cardozo & Nathan*, attorneys], for the respondent.

Present — DOWLING, P. J., MERRELL, MARTIN, O'MALLEY and PROSKAUER, JJ.; O'MALLEY and PROSKAUER, JJ., dissent.

The following is the opinion of the surrogate:

FOLEY, S. This is a contested accounting proceeding. The issues raised by the account and the objections were referred to a referee to hear and determine. The pending motion involves the confirmation of his report and the consideration of exceptions filed by the parties to certain findings and conclusions.

The decedent died intestate on December 26, 1921. He left surviving, as distributees of his estate, his widow, Florence B. Van Volkenburgh, who is the administratrix, and his daughter by a former marriage, Mrs. Susie V. Huntington, who is the objectant to the account. The value of the estate, excluding the property in dispute, is approximately $1,300,000. The issues before the referee involved the claim of the widow of title, by gifts from her husband, to certain securities of the value of approximately $200,000, and the ownership of certain personal property, consisting of the furnishings and other contents of the decedent's residences in New York city and his country home at Woodstock, Vt. The daughter, on the other hand, claimed that all this property should be included in the account as part of the estate and that the administratrix should be surcharged with the specific items or their value. Numerous hearings were had before the referee on these issues, and in his report he finds that the administratrix has established valid gifts of most of the property in dispute. The questions presented upon this motion involve, *first*, the sufficiency of the proof supporting the gifts; *secondly*, the propriety of certain rulings of the referee in the admission of evidence, and particularly whether he improperly received certain testimony of the administratrix in violation of

section 347 of the Civil Practice Act (formerly section 829 of the Code of Civil Procedure), as personal transactions with the decedent. Save for his findings and conclusions as to the ownership of Liberty Bonds valued at $200, hereinafter discussed, the report of the learned referee is confirmed, and the exceptions thereto are overruled.

*First.* I hold that the evidence sustained the referee's findings and conclusions of valid gifts of the securities and other property by the decedent to the administratrix. I hold further that entirely aside from the competency of the testimony of the widow there was sufficient independent proof before the referee to sustain each and every one of such gifts. The entire record strongly indicates the wide financial knowledge and legal experience of the decedent, his appreciation of his acts, and his great affection for his wife, which found expression in the frequent donations made to her. Certain transfers of securities and other property of substantial value, both before and after their marriage, were established by written declarations of the decedent and other irrefutable documentary proof. Other gifts were sustained by independent oral testimony of disinterested witnesses. As to some of these items, when confronted with the supporting evidence, the objectant conceded the title of the widow as donee. There are no elements of proof in the record or reasonable inferences therefrom which point to any fraud on the part of the widow, or opportunity of access by her to the decedent's property or other circumstances customarily shown in cases where fraudulent diversions of estate property have been established. The securities in dispute had been kept by her for considerable periods of time up to the date of her husband's death in her individual safe deposit boxes, to which the decedent had no access. Similarly she had no right of access to the property in his safe deposit boxes.

*Second.* I hold that the referee correctly ruled that the evidence of the widow as to the gifts was competent and not prohibited by section 347 of the Civil Practice Act. It is clear that the door had been opened for all of such testimony by the examination of the widow as administratrix under section 263 of the Surrogate's Court Act, in the accounting proceeding, by counsel for the daughter. The sequence of procedure on the accounting becomes important in this connection. A proceeding was commenced by the daughter for a compulsory accounting by the administratrix, citation issued, but before the return day the administratrix filed her voluntary account, together with the petition for its judicial settlement. The two proceedings were thereupon consolidated by appropriate order. Thereafter the daughter obtained an order, dated June 23, 1924, under the authority of section 263 of the Surrogate's Court Act, directing the administratrix to submit to an examination as to the

property which belonged to the decedent at the time of his death, or at any time prior thereto, and as to the circumstances under which she claimed that the same or any part thereof was given or transferred to her by the decedent, and as to any matter relating to her administration of the estate. The administratrix was sworn by the surrogate and the examination was lengthy and comprehensive.

Counsel for the daughter brought out from the administratrix her version of the various gifts made to her by the decedent. The administratrix claimed on the hearings before the referee that her subsequent testimony as to the gifts was competent because the door was opened on this examination by the objectant. The objectant contends that the examination of the administratrix was a preliminary formality in the nature of an examination before trial and that the mere examination before trial of an interested party does not open the door under section 347 to testimony as to the same personal transactions by the person interested, upon the subsequent trial. (*Farmers' Loan & Trust Co.* v. *Wagstaff*, 194 App. Div. 757; *Bambauer* v. *Schleider*, 176 id. 562.) The latter cases hold that there is no waiver of the right to exclude the testimony unless the examination be offered in evidence upon the trial. I hold that the examination of the administratrix in the accounting proceeding, pursuant to section 263 of the Surrogate's Court Act, is not an examination before trial or similar in nature to it. It is as much a part of the judicial record upon which the determination of the issues by the surrogate is to be made as the evidence of any of the other witnesses in the proceeding who have testified either before the surrogate or the referee. Neither the order of the surrogate nor the papers upon which it was granted limited the examination to one before trial. Moreover, in my opinion, there is no statutory authority for any examination before trial in such an accounting proceeding. In *Matter of Britsch* (128 Misc. 219) I pointed out that the provisions of the Civil Practice Act relating to an examination of a party before trial have no application to the examination of a representative under section 263 of the Surrogate's Court Act, because the Surrogate's Court Act furnishes complete authority for such an examination. (Surrogate's Court Act, § 316; *People ex rel. Lewis* v. *Fowler*, 229 N. Y. 84; *Matter of Hodgman*, 113 Misc. 215.)

Moreover, under the section there is no requirement as to the order of procedure. Objections may be filed after the examination, or the examination may follow the filing of objections. No matter when the examination may be had in the course of the proceeding, the testimony given by the representative is before the surrogate or the referee for all purposes. Such appears to have been the long-

established practice of this court. For in 1882 Surrogate ROLLINS, of this court, in *Geer* v. *Ransom* (5 Redf. 578), held that the testimony taken pursuant to the order of examination before the filing of objections should " be regarded as testimony taken in the proceedings upon the contested accounting." Moreover, the scope of the examination is at the peril of the party who conducts it. He may retain the advantage given by section 347 of the Civil Practice Act, and keep the mouth of the survivor sealed. But if he inquires as to personal transactions he waives the incompetency of the interested party. The door is then open to further testimony by the witness as to the specific transactions which have been the subject of interrogation. The manner in which the examination here was conducted was by consent of the parties, and the objectant is now estopped to question its regularity, or to change its true legal form and effect.

Section 263 of the Surrogate's Court Act, which relates to voluntary accounting proceedings, provides as follows: " On the return of a citation, issued as prescribed in the last section, the surrogate must take the account, and hear the allegations and proofs of the parties, respecting the same and make such order or decree as justice requires. *The executor, administrator, guardian or trustee may be examined under oath by any party to the proceeding as to any matter relating to his administration of the estate or fund.* If any party interested shall demand in writing that a voucher be produced and filed for any payment alleged by the account to have been made, the accounting party shall produce and file such voucher or make satisfactory proof of such payment." Support for the conclusion that the examination is part of the judicial record is found in the language of section 263 of the Surrogate's Court Act itself, for it is there directed that the surrogate " must take the account, and hear the allegations and proofs of the parties." Then follows the second sentence, which grants the right of examination of the representative, and by reasonable inference includes the testimony upon such examination as part of the taking of the account and the " proofs of the parties " submitted for consideration on the merits to the surrogate. The purpose of the italicized sentence is to allow any interested party to fully and completely examine the accounting party as to his management of the estate. It has been the experience of the Surrogate's Court that such examinations are a most effective aid in judicially settling accounts. (2 Heaton Surrogates' Courts [4th ed.], 1760, 1761.) The history of this right of examination also sustains the conclusion that it is not an examination before trial, but a component part of the record in the proceeding. It was clearly derived from the equitable jurisdiction over an accounting

in an administration suit. It was the remedy for the discovery of assets withheld by the representative.

The comprehensive and learned opinion of Judge HAIGHT of the Court of Appeals in *Malone* v. *Saints Peter & Paul's Church* (172 N. Y. 269) sets forth the history of accounting proceedings in the Surrogate's Court and their equitable derivation and nature. (See, also, *Matter of Boyle*, 242 N. Y. 342.) I pointed out in *Matter of Beare* (122 Misc. 519) that the development of equitable jurisdiction over accounts of executors or other representatives of estates grew out of the dissatisfaction and delay in the common-law action for an account, and the necessity for breaking up the determination of disputed claims into separate jury trials. The Court of Chancery assumed jurisdiction in matters of accounts when it was found that the court furnished the parties a more speedy remedy. Moreover, equity developed as a most effective aid the right of examination or discovery against the representative. (2 Story Eq. Juris. [14th ed.] 7, 309; Bisp. Eq. [5th ed.] 602, 603.) As stated in *Malone* v. *Saints Peter & Paul's Church* (172 N. Y. 269, 277): " ' But, however, it is found by experience that the most ready and effectual way to settle these matters of account is by bill in a court of equity, *where a discovery may be had upon the defendant's oath* without relying merely upon the evidence which the plaintiff may be able to produce.' (3 Bl. Com. 164.) "

Under the common-law rule as we adopted it from England, in the Colony, and subsequently in the State of New York, an interested party could not testify either in his own behalf or be called as a witness upon the trial by the adverse party. In 1848 that archaic rule was abolished. (Code Proc. [Laws of 1848, chap. 379], § 343, *et seq.;* Code Proc. [Laws of 1849, chap. 438], § 389 *et seq.*) One remnant of the rule, however, was retained in the original form of present section 347 of the Civil Practice Act, in its first enactment in 1851. (Laws of 1851, chap. 479, amdg. Code Proc. § 399.) The right of an examination of the representative under the equity procedure was expressly continued in accountings in the Surrogates' Courts in the Revised Statutes of 1830. (2 R. S. 92, § 54.) It is found also in the further revision of 1846 (Vol. 2 [3d ed.], p. 156, § 58). It existed long before 1847 (Chap. 462), when the right of examination before trial of an adverse party was created (amplified by the Field Code of Procedure in 1849). It is clear that this provision for examination was expressly granted in an accounting in the Surrogate's Court in order to except it from the general rule of evidence then in force — that an interested party could not be examined as a witness by an adverse party. Counsel for both sides here, state that the determination of the question as to whether the

examination of the accounting party in an accounting proceeding permits testimony in his own behalf is a novel one and has not been the subject of prior adjudication. But I find that it has been a long-established principle in this court, decided as early as 1850 in *Ogilvie* v. *Ogilvie* by Surrogate BRADFORD in 1 Bradford, 356. In that case likewise a gift from the decedent was claimed by the executor. The surrogate held that the door was opened by the objectant, and he stated in his opinion: " The evidence upon which the executor is sought to be charged  *  *  *  was drawn from him upon his own examination at the instance of the adverse party, and the statement cannot be so dislocated, as to separate the part which bears against him, and thereon establish his liability; and reject that which accompanies and explains it, and operates in his favor." As authority for his conclusion he cites certain English cases (*Blount* v. *Burrow*, 1 Ves. Jr. 546; *Hill* v. *Chapman*, 2 Bro. C. C. 612).

Additional support for my conclusion may also be found in the recent decision of *de Laurent* v. *Townsend* (243 N. Y. 130). The question considered in that case was the effect of an examination under sections 205 and 206 of the Surrogate's Court Act (as amd. by Laws of 1924, chap. 100), providing for the discovery of property withheld from the representative of an estate. The respondent was examined in this court and upon her examination claimed title to the assets in question by way of gift from the decedent. No further proceedings were taken in the Surrogate's Court, but an action in replevin was commenced in the Supreme Court against the respondent by the representative of the estate, wherein judgment was for the defendant. In discussing the changes in the Code of Civil Procedure, which between 1903 and 1914 in section 2709 (Laws of 1880, chap. 178, § 2710 *et seq.*, as renum. and amd. by Laws of 1893, chap. 686, and Laws of 1903, chap. 526) provided that when a witness is examined in discovery proceedings in this court all objections under section 829 of the Code of Civil Procedure (now section 347 of the Civil Practice Act) to his testimony as to the same transactions were waived, the court referred to the elimination of such provision by the revision of Surrogate's Court Practice in 1914 in section 2676 of the Code of Civil Procedure (now section 206 of the Surrogate's Court Act). The opinion states: " While we may speculate that this was done because the Surrogate's Court was then vested with jurisdiction to try the issue of title and that it was anticipated that no other or future litigation would follow, the obdurate fact remains that it was repealed. The rule as to waiver, is, therefore, to be found in section 829, Code of Civil Procedure, now section 347, Civil Practice Act, and not elsewhere." The court, however, in the next sentence of its decision made the follow-

ing significant statement which has direct bearing upon the question here: " If defendant had proceeded to the trial of the issue of title in Surrogate's Court, she would have been competent to testify in her own behalf after the plaintiff had opened the door by examining her as to the same transactions." The examination of a representative to bring in additional assets in an accounting proceeding is exactly similar to that of the respondent in a discovery proceeding. The referee properly held, therefore, that the decision in the *de Laurent* case applied here.

Counsel for the objectant also claims that the statement in the opinion of the *de Laurent* case, that the examination of the respondent was had after an answer was submitted, indicates a distinction between the effect of testimony as to personal transactions brought out upon an examination *before* answer, as distinguished from an examination *after* answer. That statement I deem to have no materiality to the conclusion of the Court of Appeals on this point. It is, in fact, erroneous since an inspection of the papers in the discovery proceeding in this court shows that no answer was ever submitted or filed. The assertion of title by the respondent was raised in her testimony on the examination. This often occurs in such proceedings in this court. But in any event the decision of the Court of Appeals must be construed as laying down the rule that section 347 is waived by the examination of the respondent whether before or after the filing of an answer, or where no answer whatsoever is filed. This rule, of course, applies only where the entire proceeding is completed in the Surrogate's Court. The statements of the administratrix in the present estate regarding the source of her title to the property were, therefore, admissible after she had been compelled to testify to the same transactions. (*Cole* v. *Sweet,* 187 N. Y. 488; *Matter of Sherman,* 227 id. 350; *Nay* v. *Curley,* 113 id. 575, 579; *Matter of Cozine,* 104 App. Div. 182.)

Section 347 of the Civil Practice Act was never intended to give an opposing party the advantage which the objectant now claims. In *Cole* v. *Sweet* (187 N. Y. 488, 492), the court said: " After compelling her to state a part of what was said and done by herself and the decedent, he insisted that she could not explain the transaction or state all that was said and done. He could not thus turn a shield into a sword. The careful balance of rights made by the Legislature to protect both parties and injure neither, would be disturbed if he could thus take advantage of the defendant. It would promote fraud instead of preventing it, which is the aim of the statute. Having forced her to tell a part of her story before the surrogate he could not read it as evidence in this action and then prevent her

from telling the whole, because the spirit of the statute, as interpreted by the decisions of the courts, is against it. The spirit of the statute is that the survivor shall not speak when the decedent cannot, unless the representative of the decedent speaks himself, or compels the survivor to tell a part when he waives the right to object to his telling the rest."

*Third.* The referee's findings and conclusions with respect to the ownership of the furnishings and contents of decedent's residence and country home are also correct and the exceptions thereto are, therefore, overruled. As to the Liberty Bonds of the par value of $200 above mentioned the referee found as facts that they were delivered by the decedent to the administratrix in an envelope on which was indorsed a memorandum in the handwriting of decedent to the effect that they were to be kept by her for his convenience and were to be returned to him if anything happened to her, and that she had not accounted for said $200 of Liberty Loan Bonds. The referee has determined that the administratrix is chargeable with the $200 of bonds and interest thereon. Those findings of fact and conclusions were based on a clerical error. It was conceded before me by both sides that the envelope in evidence and relied upon by the referee to negative the gift did not contain these Liberty Bonds. There is sufficient evidence that the widow had possession of them since their issuance and the gift to her was established. The exceptions to those findings and that conclusion are, therefore, sustained and the report is modified to the extent of holding that these bonds are not the property of the estate.

Submit decree on notice confirming the referee's report as modified by the foregoing decision and settling the account accordingly.

PROSKAUER, J. (dissenting). The issue in this proceeding for an accounting is the sufficiency of the competent evidence to sustain the claim of the administratrix that certain securities were given to her by the intestate during his lifetime. I agree that there is sufficient evidence to sustain the finding of a gift of bonds of the town of Windsor, Hotel San Remo, $8,000 of New York city bonds, $10,000 Northern Pacific 3's, and $10,000 of Central of Vermont bonds.

To sustain her contention with respect to the remainder of the securities, the administratrix must rely upon her own testimony of transactions with the decedent. It is not questioned that this testimony is barred by section 347 of the Civil Practice Act unless the provisions of that section were waived by the objectant. Upon the hearing before the referee the administratrix was examined to show her present possession of the securities. Under the reasoning of *Clift* v. *Moses* (112 N. Y. 426) I believe that this examination did

not open the door to testimony of personal transactions with the decedent.

The administratrix claims further that the bar of section 347 was waived by a preliminary examination of the accounting administratrix under the provisions of section 263 of the Surrogate's Court Act. That examination was held before objections were filed and thus before any issues were formulated or any referee appointed. It was in the nature of a complete inquisition of the administratrix. If it had been offered in evidence on the trial by the objectant, it would necessarily have opened the door to testimony by the administratrix of her transactions with the decedent. It was not offered by the objectant, however. The learned surrogate has held that every preliminary examination under section 263 becomes automatically a part of the record upon the trial of issues subsequently formulated even though it may never be offered by either party and that, therefore, interrogation of the accountant by the objectant on such a preliminary examination necessarily waives the bar of section 347. None of the authorities relied on by the surrogate justify this conclusion.

In *Ogilvie* v. *Ogilvie* (1 Bradf. 356) the contestant offered the testimony in evidence on the trial.

*Geer* v. *Ransom* (5 Redf. 578) concerned merely an order of the surrogate directing examination upon condition that the testimony be regarded as taken in the contested accounting. It did not hold that testimony otherwise taken under the predecessor of section 263 must necessarily be regarded as taken on the trial of the contested accounting.

In *Cole* v. *Sweet* (187 N. Y. 488) and in *Matter of Cozine* (104 App. Div. 182) the testimony relied on to waive the bar of section 347, or its predecessor, was taken on the trial itself.

The chief reliance of the administratrix is on a statement in the opinion of POUND, J., in *de Laurent* v. *Townsend* (243 N. Y. 130, 133): " The rule as to waiver is, therefore, to be found in section 829, Code of Civil Procedure, now section 347, Civil Practice Act, and not elsewhere. If defendant had proceeded to the trial of the issue of title in Surrogate's Court, she would have been competent to testify in her own behalf after the plaintiff had opened the door by examining her as to the same transactions." It is argued from this that by analogy an examination under section 263 of the Surrogate's Court Act similarly waives the bar if issue is subsequently joined and determined in the Surrogate's Court. I believe this conclusion is fallacious and fraught with the gravest danger in the administration of estates. Judge POUND was specifically referring to a discovery proceeding. In such a proceeding the testimony relating to the assets is a component, integral part of the trial

of the issue of title. Obviously it would be unfair in what is essentially one trial on the merits to interrogate the claimant and then deny to the claimant the right to tell the whole story. But section 263 of the Surrogate's Court Act differs essentially from a discovery proceeding. In the first place it relates to an examination only of a fiduciary. It furnishes a mechanism by which a party in interest can properly elicit information of a fiduciary's conduct of a trust in order to determine whether objection to the account of the fiduciary shall be filed. It is in no factual sense a part of the record of the trial of the issue raised by objections subsequently filed. In the present case the issues raised by the account and the objections were sent to a referee for trial. Until the administratrix referred to this examination under section 263 the referee was ignorant of its existence. It is perfectly just to give to a beneficiary a preliminary examination of a trustee to determine under what claim of right a fiduciary is asserting title to property of the decedent; to penalize the beneficiary for making this inquiry before issue was joined by holding that the bar of section 347 is waived after issue is joined is unduly to smooth the path of a fiduciary in the assertion of a claim of gift from the decedent.

The statute interpreted in the light of these considerations requires no such construction. Section 347 begins with the phrase " Upon the trial of an action or the hearing upon the merits of a special proceeding." That phrase qualifies the entire first sentence of the section. It certainly determines when a person " shall not be examined as a witness " and it equally affects the waiver clause — " except where the executor, administrator, survivor, committee or person so deriving title or interest is examined in his own behalf." Assuming that where the administrator is examined not in his own behalf, but in behalf of the contestant " upon the trial of an action or the hearing upon the merits of a special proceeding," the door would be opened to full testimony from the administrator on his own behalf, it still remains that this result cannot follow under the provisions of section 347 unless the testimony is elicited " upon the trial of an action or the hearing upon the merits of a special proceeding." A preliminary examination of the accountant before issue joined is no more a " hearing upon the merits of a special proceeding " than an examination before trial is testimony " upon the trial of an action." (Farmers' Loan & Trust Co. v. Wagstaff, 194 App. Div. 757; Bambauer v. Schleider, 176 id. 562.)

For these reasons I dissent from the affirmance of the decree in so far as it awards to Mrs. Van Volkenburgh title to the securities other than those above enumerated which were shown by independent evidence to have been given to her.