In the Matter of the Estate of THOMAS I. MORRELL, Deceased.

Surrogate's Court, Kings County, January 31, 1935.

*Sidney S. Bobbe*, for Henry J. Mills, executor of Lewis L. Morrell.

*Wilson M. Powell*, for Ruth H. Rider and another, executors of John M. Rider.

WINGATE, S.   The situation respecting this estate, as disclosed by the record, is fortunately extraordinary to a degree, since otherwise

faith in the probity of human nature would necessarily be wholly shattered.

Thomas I. Morrell died on October 2, 1892. His will was probated in this court during the following month. By its terms a trust was erected in the principal sum of $25,000 for the benefit of his son, De Witt Clinton Morrell, with the remainder payable to his next of kin on his death.

By the decree on the executorial accounting, dated February 1, 1894, the sum of $24,976.89 was directed to be paid over to John M. Rider, the trustee named in the will, for the purposes of the trust. The life tenant died on September 1, 1922, leaving as his sole next of kin his sister and brother, Anna Morrell Parry and Lewis L. Morrell.

No accounting or distribution of the remainder of the trust was ever made by the trustee, and it is alleged that he concealed the fact of the death of the life tenant from the remaindermen. The trustee and both remaindermen are now dead, and the present controversy has arisen between the executors of the remaindermen and those of the trustee respecting the total disappearance of the trust principal.

The present executors of the deceased trustee have stated in their account that they cannot locate the principal fund and have no knowledge concerning its whereabouts. No objections have as yet been interposed to the account by the legal representatives of the defrauded remaindermen, the sole issues presented concerning themselves with the extent to which the latter may examine the accountants in an effort to locate or trace the fund before the filing of objections.

To a limited extent, the accountants have already submitted to examination. They have also produced certain books and records of the deceased trustee. They have, however, declined to produce certain other books and records, and have refused to answer certain propounded questions.

It is of course primary that where a fiduciary has diverted trust funds, the *cestuis que trustent* will be permitted to follow them into any property of the trustee into which they have been diverted (*Blair* v. *Hill*, 50 App. Div. 33, 36; affd., 165 N. Y. 672; *Dunning* v. *Stearns*, 9 Barb. 630, 634; *Starr* v. *Winegar*, 3 Hun, 491, 494), and that as against any person except a *bona fide* purchaser for value, a lien will be impressed upon any property into which they may be traced. (*Hooley* v. *Gieve*, 9 Abb. N. C. 8, 21 *et seq.; Storm* v. *McGrover*, 189 N. Y. 568, 569; *Newton* v. *Porter*, 69 id. 133, 137; *Day* v. *Roth*, 18 id. 448, 455; *Perry* v. *Board of Missions*, 102 id. 99, 104; *Hale* v. *Omaha Nat. Bank*, 49 id. 626, 634; *Price* v. *Palmer*,

23 Hun, 504, 506; *Matter of Holmes*, 37 App. Div. 15; affd., 159 N. Y. 532; *Ostrander* v. *Ostrander*, 194 App. Div. 1, 8; *Bushe* v. *Wright*, 118 id. 320, 328; *Matter of Early*, 112 Misc. 54, 61; affd., 195 App. Div. 889; *Matter of Harbeck*, 142 Misc. 57, 66.)

Whereas, therefore, the executors of the deceased trustee may only be compelled to turn over in specie the property of the underlying estate which is shown to have come into their possession, or under their control (*Matter of Hayden*, 204 N. Y. 330, 340; *Matter of Davis*, 232 App. Div. 7, 8; *Matter of Walton*, 112 id. 176, 180; *Matter of Read*, 141 Misc. 716, 718; Surr. Ct. Act, § 266), if it can be shown that assets of such estate are traceable into any particular asset in the hands of the presently accounting fiduciaries, such asset will similarly be subjected to the rights of the defrauded *cestuis* by application of the equitable principle noted, since it has come into the hands of the accountant in the same plight in which it stood while in the possession of the deceased trustee. (*Matter of O'Brien*, 45 Hun, 284, 289; *Matter of Guarneri*, 149 Misc. 759, 763.) The recovery in such a situation would be in the nature of a reclamation of property as distinguished from the payment of a creditor.

The real issue in the present case, therefore, is as to whether or not the present accountants have in their possession any property upon which the representatives of the defrauded *cestuis* have a claim which is paramount to that of the accountants themselves and in respect to which the court might exercise the summary powers granted by section 266 of the Surrogate's Court Act.

The position before the court of an executor of a deceased fiduciary in respect to the accounting for the acts of the latter is precisely the same as that which the decedent would himself have occupied had his letters been revoked and he were himself accounting (Surr. Ct. Act, § 257), and the fiduciary of the decedent may be compelled " to account for the acts and doings of the decedent " (*Matter of Walton*, 112 App. Div. 176, 180; *Herbert* v. *Stevenson*, 3 Dem. 236, 238; *Matter of Butler*, 1 Con. 58, 83), which in effect become his own for the purposes of judicial scrutiny.

The objection of the accountants to the extended examination of these acts before the filing of objections is wholly without merit. Any interested party possesses this right (*Matter of Van Volkenburgh*, 128 Misc. 819, 822; 226 App. Div. 10, 13; *Matter of Ebbets*, 149 Misc. 260, 264, 265), and may, in the ordinary case, examine the accountant in respect to any and every act and dealing in respect to the estate or fund. (*Matter of Van Volkenburgh, supra*, p. 823; *Matter of Ebbets, supra*, p. 265.) Where the fiduciary is accounting for his own acts, the examination is naturally limited to

the transactions which have been performed by him. Where, however, as in the case at bar, the executor is accounting for the fiduciary acts of his decedent, the scope of the examination is extended to include anything and everything which the decedent did in the handling of the trust of which he was the fiduciary. The authorities cited by the accountants are not in point. They are decisions relating solely to the Supreme Court where a diverse statute governs and a different practice prevails. (*Matter of Van Volkenburgh, supra.*)

The present accountants, however, insist that a complete examination into the books and records of the decedent is here improper, since the latter was an attorney at law, and that the adoption of such a course might amount to the disclosure of confidential communications within the inhibition of section 353 of the Civil Practice Act. It would indeed be a traversty on justice if this enactment required interpretation in a manner which would serve to cloak fraud and grand larceny and defeat the just rights of despoiled *cestuis que trustent*.

The language of the section upon which accountants rely in this connection reads: " An attorney or counselor at law shall not be allowed to disclose a communication, made by his client to him, or his advice given thereon, in the course of his professional employment, nor shall any clerk, stenographer or other person employed by such attorney or counselor be allowed to disclose any such communication or advice given thereon."

The applicant argues with considerable force that this is a privilege which extends merely to the specified witness, or, to speak more exactly, to a witness occupying the specified relation to the subject-matter, and that since the writings here in issue are not to be adduced from one of the enumerated witnesses, the section becomes inapplicable, and cites as persuasive authorities *State* v. *Buffington* (20 Kan. 599); *Pulford's Appeal* (48 Conn. 247); *Lloyd* v. *Pennie* (50 Fed. 4); *State* v. *Hoyt* (47 Conn. 518), and Wigmore on Evidence ([2d ed.] §§ 2335 [3] and 2326). No pertinent contrary authorities are cited by the accountants, and the only one found by the court is a dictum in *LeLong* v. *Siebrecht* (196 App. Div. 74, 76), which is not necessarily in point.

Whereas the court might be inclined to determine the section to be applicable in the present situation, were such a course necessary to afford relief, it is not satisfied that any such decision is necessary at this time.

The relief sought is a direction, *first*, that the accountants produce all books, papers and records of whatsoever kind and description belonging to John M. Rider, deceased, both as trustee and individually, " including, without limiting the generality of

the foregoing, more particularly Office Registers Nos. 2 and 3, letter books, check stubs, copies of income tax reports, record of account maintained by Ruth H. Rider for the benefit of John M. Rider; " *second,* that the executors advise " the Secretary of the Treasury that it is in the best interests of the administration of this trust that copies of the income tax returns filed by John M. Rider, deceased, be furnished to " applicant's attorney; and, *third,* that Wilson M. Powell answer every question heretofore propounded to him on his examination. These applications for relief will be considered in order.

For the reasons and on the authorities hereinbefore noted, it is at least the obligation of the accountants to make full disclosure of the acts of the accountant except in so far as the provisions of section 353 may be deemed to render such acts privileged. The only matters which might be deemed to be inhibited under that section relate to " a communication, made by his client to him, or his advice given thereon, in the course of his professional employment " as an attorney. The only records of an attorney of which the court can presently conceive which might come within this description are certain classes of letters from and to clients and some individual office registry entries or their equivalent. Certainly the attorney's income tax reports and a record of an account maintained for him by a relative would not. The same also presumably applies to check stubs.

In connection even with letters and register entries, there is no presumption of privilege. No immunity would exist in respect to such matters unless a relation of attorney and client were shown to have previously come into being (*Rintelen* v. *Schaefer,* 158 App. Div. 477, 484); they related to professional matters (*Bankers' Money Order Assn.* v. *Nachod,* 120 App. Div. 732, 733) and were of a confidential nature (*Baumann* v. *Steingester,* 213 N. Y. 328, 332).

Whereas the old-fashioned letter books which are here in question contain copies of many letters, the presence of a single or even a number of privileged communications therein would not debar the applicant from knowledge of the balance. Each individual letter must be viewed as a separate entity. The same applies to each entry in the office register. *Prima facie* the applicants are entitled to knowledge of all. If any are to be withdrawn from his scrutiny, it must be because of the existence of a privilege in respect to each individual item so excepted. In each instance the burden of proof rests on the accountant to demonstrate that the privilege exists. (*Mowell* v. *Van Buren,* 77 Hun, 569, 574.)

The practical solution of the problem requires that the accountants produce all of the books, records, etc., demanded. The

applicant will be entitled to inspection of the entirety as a matter of first impression. If the accountants maintain their position that any part or parts thereof are privileged under section 353, they will specify the particular items in respect to which such position is maintained, and these individual questions will be sent to a referee for determination.

On the second item of relief sought by the applicant there can be no possibility for any reasonable difference of opinion. On the record the deceased fiduciary has committed the heinous offense of commingling the funds of the trust with his own. Every single act in connection with his own personal affairs is, therefore, the subject of inquiry in the effort of the court to remedy the grievous wrong which he has committed. (See *Blair* v. *Hill, supra; National Park Bank* v. *Goddard*, 87 Hun, 487; affd., 156 N. Y. 657; *Hart* v. *Ten Eyck*, 2 Johns. Ch. 62, 107, 108; *Meinhard* v. *Salmon*, 249 N. Y. 458, 469; *Seaward* v. *Davis*, 133 App. Div. 191, 194; modified on other grounds, 198 N. Y. 415; *National Bank* v. *Insurance Co.*, 104 U. S. 54; *Cox* v. *Wills*, 49 N. J. Eq. 573, 574; 22 A. 794; *Andrews* v. *Brown*, [Tex.] 10 S. W. [2d] 707, 709, and authorities cited.) His income tax returns may be of assistance in this regard, wherefore accountants must do all in their power to make them available.

Coming now, to the third variety of relief sought, namely, a direction to the accounting executor to answer certain questions propounded to him on his examination, his entire attitude as disclosed by the minutes of the hearing demonstrates a fundamental misconception of the entire situation and of his relation to it. It is entirely true that the admissions of the accounts establish the present applicants as creditors of the estate of the deceased trustee. They have, however, rights which transcend the rights thus admitted, namely, to receive a lien, dehors the estate, upon any property into which their trust fund may be traced. It is this right which they are seeking to exercise. Were the deceased trustee alive, he would be standing on the threshhold of State's prison by reason of his commission of the most heinous professional crime within the power of an attorney to commit. The accountants have elected to stand in his shoes, not so far as criminal responsibility is concerned, but in respect to the acts which constituted the crime; and although they may not be held personally liable in their own property for his acts, they are bound to make every disclosure required of them which is in their power in relation to those acts. Attempts at obstruction in the efforts of those defrauded and of the court to remedy the wrong must inevitably have unpleasant consequences. If they have any knowledge or

data which will assist the victims to secure their rights, it is their duty to make full, frank and voluntary disclosure.

The minutes of examination disclose refusals to answer which amount to such obstruction and which were wholly unwarranted in view of the duty of disclosure which the law places on the accountants. Since the questions are not numbered, reference will be made to pages of the record. The following questions will be answered: Page 3, questions 1 and 2; page 4, questions 2 and 5; page 5, question 3; page 7, questions 1, 3, 4 and 6; page 9, questions 1 and 3; page 10, question 5; page 11, questions 2 and 3.

An order may be presented on notice embodying the substance of the foregoing decision.