[889 NYS2d 423]

In the Matter of the Accounting of ROBERT ZIRINSKY, as Executor of RUTH ZIRINSKY, Deceased Executor of RALPH ZIRINSKY, and as Executor of RALPH ELLIOT ZIRINSKY, Deceased. (And Six Other Proceedings.)

Surrogate's Court, Nassau County, October 16, 2009

APPEARANCES OF COUNSEL

*Farrell Fritz, P.C.*, Uniondale, for Robert Zirinsky. *Novick & Associates, P.C.*, Huntington, and *Fried, Frank, Harris, Shriver & Jacobson, LLP*, New York City, for Linda Zirinsky Gilbert and another. *Kaye Scholer, LLP*, New York City, for Cynthia Richard Zirinsky. *Jerome L. Levine*, New York City, respondent pro se. *McCoy, Parkas & Ronan, LLP*, Garden City, guardian ad litem, for Julie Hirsch. *Ruskin, Moscou & Faltischek, P.C.*, Uniondale, for Harry Zirinsky. *Frank D. Scharf*, New York City, successor cotrustee. *Zachary Gilbert*, Chapel Hill, North Carolina, respondent pro se. *Benjamin Gilbert*, Chapel Hill, North Carolina, respondent pro se.

## OPINION OF THE COURT

JOHN B. RIORDAN, J.

The proceedings before the court consist of an estate accounting and six accountings of testamentary trusts. All are contested. All feature the same person as the accounting fiduciary, Robert Zirinsky. The litigation has been protracted and contentious. This is Robert's motion to quash a subpoena dated March 19, 2009, and for a protective order to prevent disclosure of several years of Robert's personal income tax returns as well as related material. For the reasons that follow, the motion to quash is denied.

This litigation involves two intertwined estates, those of Ralph Zirinsky and Ruth Zirinsky. Ralph Zirinsky died on May 7, 1980, and his will was admitted to probate in this court. Ruth Zirinsky was his surviving spouse. She died a resident of Nassau County on May 29, 2003. Ralph and Ruth Zirinsky were survived by three adult children: Robert Zirinsky, Linda Zirinsky Gilbert, and Jill Zirinsky Hirsch.

Ralph Zirinsky, along with members of his extended family, operated a real estate business that had been in existence for several generations. Ralph's will was admitted to probate by this court on August 11, 1980. Under Mr. Zirinsky's will, his residuary estate was divided into two shares (I and II). Share I was to be funded with assets that would qualify for the marital deduction then in effect. Three trusts were established by the will's ARTICLE SECOND, equally funded by Share I. Each of these three ARTICLE SECOND trusts was to be administered separately and the net income of each was to be paid to Ruth or applied to her benefit. The trustees were also given the discretion to make principal payments to Ruth. Ralph's will made Ruth the donee

of a general testamentary power of appointment of the remainder of the three ARTICLE SECOND trusts. Ralph and Ruth's three children were the takers in default of the exercise of the power of appointment over their respective portions of the Share I, ARTICLE SECOND trusts, albeit via continuing trusts for their benefit.

Share II of Ralph's residuary estate was also divided into three equal parts under ARTICLE THIRD, to be held as separate sprinkling trusts for the benefit of Ralph's three children (Robert, Linda, and Jill) and Ruth (who possessed no power of appointment over the remainder of these trusts). The three ARTICLE THIRD trusts continue for the lives of Ruth and her three children, with the remainder going to the issue of the three children. The initial cotrustees of these six testamentary trusts were Robert, Ruth, and Richard Zirinsky (Ralph's brother).

Ruth's will was admitted to probate on December 6, 2005, after objections to its probate were dismissed by summary judgment. Ruth's will exercised her power of appointment, directing the remainder of the three ARTICLE SECOND trusts from Ralph's will be disposed of as part of her residuary estate. ARTICLE FIFTH of Ruth's will bequeaths the residuary as follows: two thirds in trust for Robert; one sixth for Linda; and one sixth for Jill. The intent and effect of this unequal exercise of the power of appointment, when considered with the equal distribution under ARTICLE THIRD of Ralph's will, is to apportion Ralph and Ruth's combined real estate interests so that Robert obtains a 50% effective share, Linda a 25% effective share, and Jill a 25% effective share of the family's real estate interests. Hence, Robert retains the effective control over these interests.

As noted above, for several generations the business of the Zirinsky family has been real estate development and management in New York City. When Ralph Zirinsky died in 1980, the gross fair market value of his real estate interests was said to amount to $1,044,036 while the net taxable estate was $463,302. At the time of Ralph's death, Ruth was 48 years old. Robert had recently graduated from law school and had entered the family business. Robert's entire professional life has been devoted to the family business. Under Robert's stewardship as cotrustee of the various trusts the value of the family's real estate interests grew over the next 25 years and today may be worth as much as $100,000,000. It is not disputed that for most of this period Robert was the dominant cotrustee as he made himself expert in the business of real estate development and management. In

these accountings, however, his sisters allege that Robert breached his fiduciary duties to the trust and to them by long-standing patterns of self-dealing and usurpation of trust opportunities in order to enrich himself and deprive them of their rightful share of the trusts.

New York requires full disclosure of all matter material and necessary in the prosecution or defense of an action. (CPLR 3101 [a].) Disclosure is available from parties to the litigation and nonparties. As to the latter, disclosure is available provided notice is given stating the circumstances or reasons such disclosure is sought (CPLR 3101 [a] [4]). Case law has liberally construed the scope of material that is discoverable, ruling that "the words 'material and necessary' are . . . to be interpreted liberally to require disclosure . . . of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay . . . the test is one of usefulness and reason" (*Allen v Crowell-Collier Publ. Co.*, 21 NY2d 403, 406-407 [1968]). Case law has long recognized an exception to the liberal rules of disclosure with regard to the discoverability of an individual's income tax returns. (*See e.g. Altidor v State-Wide Ins. Co.*, 22 AD3d 435 [2d Dept 2005].) "Because of their confidential and private nature, disclosure of tax returns is disfavored." (*Gordon v Grossman*, 183 AD2d 669, 670 [1st Dept 1992].) Consequently, income tax returns will not be discoverable absent a "strong showing that the information is indispensable to the claim and cannot be obtained from other sources" (*Latture v Smith*, 304 AD2d 534, 536 [2d Dept 2003]).

Set against these stringent standards is an even more stringent set of standards—the duties that govern the conduct of fiduciaries. In *Meinhard v Salmon* (249 NY 458 [1928]), Chief Judge Cardozo famously wrote that "not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior" (*Meinhard v Salmon*, 249 NY 458, 464 [1928]). Chief Judge Cardozo further warned of undermining the rule of undivided loyalty by the " 'disintegrating erosion' of particular exceptions" (*Meinhard v Salmon*, 249 NY 458, 464 [1928]). Under the facts presented to the court on this motion, it is clear that the individual income tax returns of Robert Zirinsky are discoverable and their production will not violate the safeguards given to such disclosure.

Robert Zirinsky's whole professional life has been spent in the family's real estate business, first under the tutelage of his father when Robert was graduated from law school and then on

his "own" when his father died. A variety of issues are being contested in these accountings that involve allegations of divided loyalty, self-dealing, usurpation of trust opportunities, etc. There is companion litigation seeking the revocation of letters against Robert premised on his alleged violations of SCPA 711.

Initially, Robert's two sisters sought disclosure of the personal tax returns for two reasons; first, that they would reveal whether Robert reported his receipt as income of the unallocated expense accounts of the trusts (or their operating entity). Second, the objectants were concerned that the returns might reveal hidden assets, which allegedly should have been part of the estate or trusts but that were usurped by Robert. As to the former concern regarding unallocated expenses, the court notes that Robert's attorneys, in an effort to forestall production of the tax returns, admitted that Robert's returns contained some entries attributing unallocated expenses to his personal income and other returns for some years when no such attribution was made. Both admissions are problematical vis-à-vis Robert's duties as a trustee on a range of issues about the nature and extent of his compensation, but more important for purposes of this motion the court sees no reason to allow such admissions to prevent access to the very source of those admissions, the tax returns themselves.

The court is not persuaded that the cases cited in support of the motion to quash are controlling. *Nanbar Realty Corp. v Pater Realty Co.*(242 AD2d 208 [1st Dept 1997]) is distinguishable by virtue of readily available substitutes for disclosure of returns in the form of schedule K-1s. Moreover, *Nanbar* does not go to the heart of the problem in this case—the alleged surreptitious looting of the estates by a fiduciary who is charged with such a high duty of conduct. These allegations involve not just allegations of self-dealing and divided loyalty but also the usurpation of trust opportunities. Whether such allegations are proved at trial is beside the point. Such allegations, combined with some facts already revealed and uncontroverted, are more than sufficient to meet the objectants' burden on the instant issue. When a fiduciary whose entire professional life and livelihood has been these estates has been charged with serious breaches of his duty, then the court believes his personal income tax returns are discoverable. In *Matter of Morrell* (154 Misc 356, 361 [Sur Ct, Kings County 1935]), the court held:

> "On the record the . . . fiduciary has committed the
> heinous offense of commingling the funds of the

trust with his own. Every single act in connection with his own personal affairs is, therefore, the subject of inquiry in the effort of the court to remedy the grievous wrong which he has committed. His income tax returns may be of assistance in this regard." (Citations omitted.)

Of course, at this point in the litigation, this court draws no conclusion as to whether Robert has, in fact, violated any fiduciary duty. Nevertheless, *Morrell* does stand for the proposition that substantial allegations of fraud, self-dealing, and diversion of opportunities on the part of a fiduciary are special circumstances allowing for the discoverability of the demanded records, including income tax returns (*cf. Dore v Allstate Indem. Co.*, 264 AD2d 804 [2d Dept 1999]; *Kay v Kay*, 223 AD2d 684 [2d Dept 1996]). Moreover, the court's in camera review of tax returns that are undoubtedly voluminous and complicated is not an acceptable alternative to discovery.

For the foregoing reasons, the motion to quash the subject subpoenas is denied in its entirety. The demanded documents including Robert's individual income tax returns are to be produced within 30 days of service of this order on Robert or his attorneys.