Matter of Skoutelas (Budis) (2024 NY Slip Op 51508(U))

[*1]

Matter of Skoutelas (Budis)

2024 NY Slip Op 51508(U)

Decided on November 8, 2024

Surrogate's Court, Queens County

Kelly, S.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 8, 2024
Surrogate's Court, Queens County

Accounting by Fay Skoutelas as the Trustee 
 of the Scoufaras Trust created under Section 7 of the Last Will and Testament of Sophia Budis, Deceased.

File No. 2010-795/h

Farrell Fritz, P.C.
By: Eric W. Penzer, Esq. and Maria Johson, Esq.
Attorneys for Petitioner, Fay Skoutelas
Josephs Law Partners, LLP.
By: Gary S. Josephs, Esq.
Attorneys for respondents Maria Budis and Emmanuel Budis
Law Office of Charles A. Singer
By: Charles A. Singer, Esq.
Attorneys for respondent John Budis

Peter J. Kelly, S.

In this accounting proceeding respondent, John Budis (independently) and respondents, Maria Budis and Emmanuel Budis (jointly) move pursuant to CPLR 3124 and SCPA 2211 for an order compelling petitioner, Fay Skoutelas, to produce documents responsive to their respective document demands, and adjourning the petitioner's 2211 examination to a date 45 days after responsive documents are produced. The petitioner opposes both motions and cross-moves to vacate the respondents' demands pursuant to CPLR 3103.
For factual background, the decedent, Sophia Budis, passed away testate on February 19, 2009. The decedent's Last Will and Testament dated November 8, 2008 was admitted to probate on March 4, 2010. Letters testamentary issued to decedent's spouse, John, and Letters of trusteeship issued to decedent's sister, Fay, the petitioner.
The will provides in pertinent part as follows:
7.01. I give, devise and bequeath all my right, title and interest in and to the property listed in this Section 7.01 to the Trustee of the SCOUFARAS TRUST, IN TRUST, to hold the same in a separate trust fund to be known as the 'SCOUFARAS TRUST' which property shall include the following:
(a) all of my interest, including my interest as a member, owner or otherwise, including my share of profit, loss and capital, in and to 1ST. KINDRED, LLC, a New York limited [*2]liability company; (b) all of my interest, including my interest as partner, owner or otherwise, including my share of profit, loss and capital, in and to FKS SCOUFARAS PARTNERS, New York general partnership.
The will provides for the SCOUFARAS TRUST to be disposed of as follows:
During the lifetime of my Spouse while my children are under the age of 30 years old, my Trustee shall pay to any one or more of the group consisting of my Spouse and my children...the entire net income and such amounts of principal of the SCOUFARAS TRUST and in such proportions of the principal as my Trustee deems necessary for their maintenance, support, health, and education...my Trustee shall bear in mind my primary objective is to assure that the needs of my Spouse and my children are liberally provided for and that such amounts should be directly paid to my Spouse for the maintenance, support and health of my Spouse and my children.
While the trust's corpus was to be comprised of the decedent's entire interest in 1ST KINDRED, LLC and FKS SCOUFARAS PARTNERS, apparently the partnership is dissolved.
Pursuant to its operating agreement, the corporation was created to "acquire, buy, sell, own, exchange, trade in, hold, improve, develop, lease, manage, operate, subdivide, and otherwise deal in and with real property." The parties agree that the decedent, along with her brother and the petitioner each possessed a 33 ⅓% interest of the corporation.
In September of 2023, decedent's spouse and children filed a petition seeking, in part, to compel an accounting by Fay as trustee. According to that petition, Fay, trustee and managing member of the corporation, had refused a recent request to provide an accounting and thereafter ceased making quarterly distributions to the estate as she had for the previous 12 years. 
Fay had objected to a judicial accounting stating that because the trust was never funded by the estate and that its only assets consisted of two checks that she deposited in error in a trust account and later withdrew, an accounting in her capacity as trustee would provide no further information.
Conceptually, it appears that funding the trust would require John, as executor, to execute an assignment of the estate's economic interest in the corporation over to the trustee [FN1]
. In reality, John's power to "fund" the trust is purely symbolic. As evidenced by Fay's initial act of directly funding the trust account, it is the managing member of an LLC that controls its purse strings. However, Fay, ignoring practicality and past practice, is now insisting on such ritualistic conduct. If there is a basis other than intransigence or acrimony for this circuitous protocol, it has not yet been disclosed or discovered by the Court. After several conferences with court personnel, the parties agreed to the issuance of a 30 day order to account. As Fay's counsel had previously represented, the accounting now before the Court is a "zero" accounting, indicating that no trust assets came into petitioner's hands as trustee for the time period of March 4, 2010 to [*3]January 23, 2024 [FN2]
.
The reason for this representation is set forth in Schedule J, wherein the trustee recounts the longstanding dispute between the trustee and the executor concerning the funding of the Trust.
Suffice it to say, disagreements between the parties have been festering for over ten years. Previously, Fay, as trustee, commenced a proceeding in this Court to compel John, the executor, to fund the trust (File No: 2010-795/B). John, in response, seemingly claimed to have a managing interest in the corporation and admitted in his answer that he had indeed refused to fund the trust because of Fay's misconduct. Shortly after that, John commenced separate proceedings seeking Fay's removal and his appointment as trustee (File Nos: 2010-795/C&D).
In addition to the above proceedings, which were discontinued in favor of the pending accounting, John commenced a derivative action in Queens County Supreme Court in his capacity as executor, claiming, inter alia, that the trustee had breached her fiduciary duty, breached the operating agreement, and sought an accounting of her actions. 
In its decision of July 16, 2014, the Commercial Division observed the following:
Upon the death of Sophia Budis, her interest in 1st Kindred LLC became an asset of her estate. Under her Will, her interest in 1st Kindred was to be transferred to a Trust, of which defendant Skoutelas is the trustee. Plaintiff, as executor of Sophia Budis' estate, was supposed to transfer said interest to the Trust but has admittedly not done so in light of the allegations he asserts in this action.
The Court went on to dismiss John's derivative action for want of standing:
According to the clear terms of the Operating Agreement, plaintiff is an interest holder but not a member of 1st Kindred LLC and, therefore, is not vested with the requisite member status necessary to bring this action...
That being said, the Court went on to provide that if John were so inclined, he could pursue his claims for breach of fiduciary duty against the trustee in Surrogate's Court. Presumably, these proceedings are a manifestation of such interest.
After opening salvos, the parties entered into a discovery schedule providing for document discovery and an examination of the petitioner pursuant to SCPA 2211[2]. 
Although the parties are in agreement that the only asset of the trust is the economic interest in 1ST KINDRED, LLC, petitioner has taken the position that respondents are not entitled to any documents pertaining to the LLC, resulting in the respondents' motions to compel and petitioner's obligatory cross-motion for a protective order. 
To obtain disclosure pursuant to CPLR 3101 all that is required is that demanded items be "material and necessary" to the prosecution or defense of a claim (see Kapon v Koch, 23 NY3d 32 [2014]). "The words 'material and necessary' as used in section 3101 must 'be interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will [*4]assist preparation for trial by sharpening the issues and reducing delay and prolixity'" (Kapon v Koch, supra at 38. "The test is one of usefulness and reason" (Allen v Crowell-Collier Publishing Co., 21 NY2d 403, 406 [1968]). 
The burden is on the objecting party to demonstrate that the materials being sought are not relevant to any proper inquiry (see Gertz v Richards, 233 AD2d 366 [2d Dept 1996]). 
In support, petitioner argues that because the trust was not funded with the estate's economic interest in the corporation, she has no duty to account for the operations of the corporation because she had no control over it in her capacity as trustee. Thus, petitioner reasons that materials relating to the corporation are not relevant and she is not obligated to provide disclosure concerning same.
Contrary to petitioner's claims, examinations pursuant to SCPA 2211 are not solely limited to matters relating to the administration of the trust as reflected in the petition and exhibits submitted. In fact, oftentimes objections to a fiduciary's account center around the omission of assets in the filed accounting. In this regard, accountings have been likened to proceedings for the discovery of assets withheld by the accounting fiduciary (see e.g., Matter of Van Volkenburgh, 128 Misc 819, affd. 226 App. Div. 10, affd. 254 NY139; see also Matter of Greenstein, 1988 NY Misc Lexis 886 [Sur Ct, Westchester County 1988] ("A party may examine the fiduciary so as to ascertain if all assets have been collected, accounted for or distributed") (citing Matter of Stanley, 59 Misc 2d 232, 234 [Sur Ct, NY County 1969]).
Moreover, although petitioner takes great pains to sever her role as trustee from that of managing member of the corporation, where, as here, the trustee holds "working control" of a corporate entity, the fiduciary may be called upon to account in the Surrogate's Court for actions taken in the capacity of a corporate officer or general partner (see In re Hubbell's Will, 302 NY 246, 254-55 [1951]; In re Estate of Brandt, 81 AD2d 268 [1st Dept 1981]). 
The rationale for the above principle is that the "Surrogate possesses the equitable power to disregard the corporate entity and may proceed to treat the estate fiduciaries and their corporate problems with respect to the disposition of the corporate assets, and its effect upon the estate, upon the realistic basis that the fiduciaries and the management of the corporation are one and the same" (In re Estate of Weinstein, 25 AD2d 776 [2d Dept 1966]). Such is clearly the case here.
It would seem peculiarly inequitable to prevent the trust beneficiaries from receiving information in this forum which pertains to its sole asset when they have previously been denied such relief due to lack of standing in the Supreme Court. The trust beneficiaries should have an opportunity to ascertain whether all of the assets of the trust have been accounted for and to verify whether the trustee has taken all steps required of her in the administration of the trust (see e.g., Matter of Bierschenk, 140 NYS2d 749 [Sur Ct, Kings County 1955]).
Whether "funded" or not, and without regard to the apportionment of responsibility for any failure in this regard, information reasonably necessary to determine the value of the trust's corpus and the distributions to which the beneficiaries are entitled are plainly relevant in a trustee's accounting. In this instance, the party that has the ability to provide this necessary information is a trustee who also happens to manage the corporation.
To hold otherwise would denude the petitioner's overriding fiduciary obligations in favor of a strict bureaucratic tenet. As Justice Cardozo has famously stated:
A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the "disintegrating erosion" of particular exceptions... Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd.
Meinhard v Salmon, 249 NY 458 [1928] (internal citations omitted).
Based on the facts sub judice, the trustee cannot cling to a titular distinction to shield her from providing information that is not only relevant, but essential to determine whether the beneficiaries' interests have been properly served.[FN3]

Consequently, disclosure of documents pertaining to the corporation, its holdings, finances, operation, and value are plainly relevant and thus discoverable.
Accordingly, the motions to compel and cross-motion are granted to the following extent:
With respect to the First Demand for Discovery and Inspection of Maria Budis and Emmanuel Budis dated May 10, 2024, petitioner is ordered and directed to furnish documents responsive to demands: 1, 2, 8, 10, 11, 12, 13, 14, 15, 16, 17,18, 19, 20, 23, 24, 25, 26, 27, 29, and 30 for the accounting period. 
The cross-motion is granted with respect to demands: 3, 4, 5, 6, 7, 9, 21, 22, 28, and 31. Said demands, seeking, inter alia, "all documents" without regard to subject matter are not sufficiently particularized, palpably improper and are thus vacated (CPLR 3120; Weiss v. Meiselman, 155 AD2d 533 [2d Dept 1989]).
With respect to the First Set of Document Demands of respondent John Budis dated May 2, 2024, petitioner is ordered and directed to furnish documents responsive to demands: 1, 2, 8,10,11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 23, 24, 25, 26, 27, 29, 31, and 32.
The cross-motion is granted with respect to demands: 3, 4, 5, 6, 7, 9, 21, 22, 28, and 30. Again, Said demands, seeking, inter alia, "all documents" without regard to subject matter are not sufficiently particularized, palpably improper and are thus vacated (CPLR 3120; Weiss v. Meiselman, 155 AD2d 533 [2d Dept 1989]).
The responsive documents shall be furnished on or before December 20, 2024. 
The 2211 examination of the trustee shall be conducted on or before January 31, 2025. 
Objections, if any, shall be filed on or before February 10, 2025.
Lastly, in light of the issues presented and in the interest of fully resolving the longstanding conflict between the parties, the Court sua sponte orders and directs John Budis to render and file his account as executor of the estate of Sophia Budis, petition for its judicial settlement, and cause citation to issue upon all interested parties on or before December 20, 2024 (SCPA 2205[1]).
This is the decision and order of the Court.
The Clerk of the Court is directed to forward a copy of this decision and order to the [*5]parties that have appeared in this proceeding.
Dated: November 8, 2024
ACTING SURROGATE

Footnotes

Footnote 1:Alternatively, John could have deposited the distributions that had been made to the estate in an estate account, and subsequently cut a check from the estate account back to Fay as trustee. This scheme is hardly a model of efficiency.

Footnote 2:Notably, and in contrast to the accounting filed, counsel for the petitioner had previously submitted an "Affirmation regarding value of the Trust" which stated that "the current approximate value of the Trust is $2,653,457.91 comprised of 1/3 interest in 1st Kindred LLC, valued at approximately $2,408,000.00 and cash in the amount of $245,457.91."

Footnote 3:Whether the executor has fulfilled his separate fiduciary duties and any liability lowing therefrom, also would require the inspection of the requested information.